THE STATE ex rel. UNITED RAILWAYS COM-PANY, Appellant, v. PUBLIC SERVICE COM-MISSION.

In Banc, March 24, 1917.

1. **PUBLIC SERVICE COMMISSION:** Powers: Limited by Constitu-tion. Despite the fact the statutes of other States creating public service commissions and defining their powers may be similar to and are often identical with our own, in construing the Missouri act little aid is afforded by the decisions of such States, since their organic laws are different from ours, and- our legislative acts are restricted by plain constitutional provisions.

2. ———: ———: **To Direct Construction of Street Railway.** The Pub-lic Service Commission has no power to order an existing private corporation to apply to a municipal authority for a franchise to construct and operate a street railway in the public streets of a city.

3. ———: ———: ———: **Consent of City.** Since the Constitution (Art. 12, sec. 20) prohibits the General Assembly from enacting a law granting the right to construct and operate a street railroad in any city "without first acquiring the consent of the local author-

ities having control of the street or highway proposed to be occupied by said street railroad," the Public Service Commission has no power, although a statute attempts to authorize it to do so, to order a private company, operating a street railway on certain streets of a city, to apply to the municipal authorities for a franchise to construct and operate a street railway on other streets.

4. ——: ——: ——: ——: Source of Power. The source of the power to consent to the construction of a railway on a public street is the local authorities; the language of the constitutional provision (Art. 12, sec. 20) is not directed solely to corporations seeking the privilege to construct and operate a street railroad; a condition precedent to the validity of a statute authorizing such use of a public street is that the consent of the local authorities be first obtained.

5: ——: ——: ——: Exceptions to Constitutional Inhibition. Modifications in the application of a constitutional provision are permissible only in the presence of clearly defined exceptions, and where such are neither expressed nor implied neither courts nor the General Assembly have any authority to make them.

6. ——: ——: ——: ——: Legislative Modification. In a conflict between the Constitution and a statute the latter must yield. Subsequent legislation cannot modify the Constitution.

7. ——: ——: Consent: Compulsion: By Indirection. Consent such as the law recognizes cannot be the subject of compulsion. Its existence depends on the exercise of the voluntary will of those from whom it is obtained. The Public Service Commission cannot by an order directing a private corporation to extend its railway tracks upon unoccupied public streets and to obtain within thirty days the permission of municipal authorities to do so, compel, in this indirect way, said authorities to consent to such extension.

8. ——: ——: Statute Restricted to Constitutional Limitations. It will not be presumed that the Legislature intended to enact an invalid law. The extensive powers given by section 49 of the Public Service Act, Laws 1913, p. 588, to the Commission to order a street railway to construct additional tracks and make such changes, improvements and additions as may promote the security and convenience of the public or secure adequate service or facilities for the transportation of passengers, are to be construed as subservient to and in harmony with the constitutional provision forbidding such extensions until the municipal authorities consent to such construction, and not as authorizing the Commission to order the railway company to take the initiative in procuring the required consent.

9. ——: ——: Scope of Statute: Incidental Facilities. The Public Service Commission has power to order the construction of such sidetracks, switches, cross-overs and terminals as are incidental to

the operation of the main lines of an existing railway corporation; but the Legislature has no constitutional authority, and hence the Commission is not empowered, to compel such corporation, in the absence of authority in its charter, to enter new territory by the extension of its lines of railway upon other public streets.

10. ——: ——: St. Louis Charter: Statute Paramount. Under the provision of the Constitution authorizing the city of St. Louis to frame and adopt a charter for its own government, the city did not acquire the right to assume all powers the State may exercise within the city limits, but only those incident to it as a municipality or which concern matters of purely local government.

11. ——: ——: ——: Control of Public Utilities. The provisions of the present St. Louis charter which attempt to vest in the Board of Aldermen full power to regulate the construction, operation, charges and facilities of a public utility, not being a matter of purely local or municipal concern, must yield to the paramount authority of the statute investing such regulation in the Public Service Commission.

12. ——: ——: Abandonment of Franchise by Non-User. The right or franchise granted to a company to build a railway on a named street, unused for twenty-four years, is to be considered as abandoned by the company; and the Public Service Commission is not authorized by reason of the original grant to direct the company in regard to its exercise. [On Motion to Modify Opinion.]

13. ——: ——: ——: Judicial Forfeiture. The consent of the city to the occupancy of its streets by a railway company is not technically a contract, but a privilege or license, and being such and being unused for such a length of time as to constitute an abandonment, a judicial proceeding to effect its forfeiture is not necessary. [On Motion to Modify Opinion.]

Appeal from St. Louis City Circuit Court.—*Hon. George H. Shields*, Judge.

REVERSED AND REMANDED (*with directions*).

*Boyle & Priest* and *William E. Baird* for appellant.

(1) The Constitution provides that the privilege of operating a street railroad shall be acquired by securing the consent of the local authorities and this is the only manner in which such privilege can lawfully be acquired. Mo. Constitution, art. 12, sec. 20; Grand Ave. Railroad v. Lindell Railroad, 148 Mo. 637; State ex rel. v. Lindell Railroad, 151 Mo. 162. (2) While this consent may impose upon the grantee duties which are es-

sentially public, it creates a relation which in many respects is wholly contractual between the street railroad and the city as a corporation. Springfield Railroad v. Springfield, 85 Mo. 674; State ex rel. v. Railroad, 85 Mo. 282; Railroad v. Kirkwood, 159 Mo. 252; Cleveland v. Electric Co., 201 U. S. 529. (3) In the city of St. Louis this consent can be given only by ordinance and an acceptance by the street railroad; this is purely a legislative act, the city acting as the delegated agent of the State. City Charter, art. 1, sec. 1, clause 12; Railroad v. Railroad, 148 Mo. 645; State ex inf. v. Railroad, 151 Mo. 183; Township v. Railroad, 130 Mich. 363; People ex rel. v. Railroad, 178 Ill. 594; State v. Railroad, 51 Kan. 609; Railroad v. Brown, 97 Va. 26; City v. Railroad, 95 Mich. 456. (4) The power of the commission is limited to the regulation of the service afforded and which may be afforded under existing franchises; it has no power to grant the privilege to operate or to compel a street railroad to make a contract with the city. Pub. Ser. Comm. Law, sec. 49; Towers v. Pub. Ser. Comm., 95 Atl. 170; Railroad v. Dustin, 142 U. S. 492; Pub. Ser. Comm. v. Railroad, 89 Atl. 726; Laird v. Railroad, 88 Atl. 347; Railroad v. Towers, 94 Atl. 330; Railroad v. Willcox, 94 N. E. 212. (5) The regulation of rates charged by a public utility as well as the character of service afforded by it under existing franchises is a matter of general State concern. State ex rel. v. Telephone Co., 189 Mo. 83; Dillon, Mun. Corp. (5 Ed.) sec. 63. (6) The charter provision purporting to give this power to the city, being in conflict with the State law on the same subject, is unconstitutional and void. It was not competent for the city to make such provision in its charters. State ex rel. v. Court, 120 Pac. 861; Elec. Co. v. Seattle, 206 Fed. 955; Power Co. v. Grant's Pass, 203 Fed. 173.

*Alex. Z. Patterson* and *James D. Lindsay* for respondent.

(1) The legislation embodied in the Public Service Commission Act and the finding and order of the Com-

mission in the instant case constitute an exercise of the police power of the State, which is never to be abridged, or so construed as to permit corporations to conduct their business in such manner as to infringe the equal rights of individuals, or the general well-being of the State.  Constitution, art. 12, sec. 5; Public Service Commission Act, Laws 1913, and especially section 47, subdivision 2, and sections 49 and 127.  (2) The finding of the Public Service Commission in this case is a determination of the coexistence of the conditions prescribed by the legislative power, as  authorizing the direct exercise of that portion of the police power of the State delegated to the Commission, and expressed in its order, in this proceeding. Public Service Comm. Act, Laws 1913, sec. 49; Lime Co. v. Railroad Comm., 144 Wis. 523;  Florida v. Railroad, 56 Fla. 617, 32 L. R. A. (N. S.) 639.  It is not necessary to decide whether the Legislature, by the Public Service Commission Act, delegated either judicial or legislative power, or neither of them, to the Public Service Commission.  The Commission was empowered by said act to ascertain whether certain specified conditions exist in a given case, and to act upon the same pursuant to a prescribed method, and in accordance with the conditions found to exist. Monongahela Bridge v. United States, 216 U. S. 177; Railroad v. Taylor, 210 U. S. 281. (3) The Public Service Commission of Missouri has the power, having found the coexistence of the required conditions, to order the Railways Company to make extensions of its lines in the city of St. Louis, and to extend and operate such lines upon streets not covered by existing franchises, subject, however, to the concurrent constitutional right of the authorities of said city, to withhold consent to the use by the company of such streets, or to grant such use upon conditions; such conditions to be consistent with the powers possessed by the city, local, and incidental to its government as a municipality only, closely appurtenant to such constitutional right, and not violative of, but "subject to,

and in harmony with," the general and paramount police power of the State. Public Service Commission Act, Laws 1913; Constitution, secs. 5 and 20, art. 12, and secs. 20, 21, 22, 23, 25, art. 9; State ex rel. v. Telephone Co., 189 Mo. 83; State ex rel. v. Stobie, 194 Mo. 14; Railroad v. State, 29 Okla. 640; Griffin v. Railroad, 150 N. C. 312; Dewey v. Railroad, 142 N. C. 392; State v. Railroad, 164 S. W. 491; Railroad Comm. v. Railroad, 185 Ala. 354, L. R. A. 1915-D, 98. (4) The power granted to the Public Service Commission to order public service corporations to make extensions, additions and improvements in plants, and in service, carries with it, by implication, the power to require all those intermediate things to be done, which are reasonably necessary for the accomplishment of the ultimate object. Railroad v. State, 29 Okla. 640; Railroad Comm. v. Railroad, 185 Ala. 354; State v. Railroad, 164 S. W. 491; Railroad v. Jacobson, 179 U. S. 287, 302; Railroad v. Minnesota, 186 U. S. 257-260; Griffin v. Railroad, 150 N. C. 312; Atlantic Coast Line v. Corporation Comm., 206 U. S. 1-27; Staton v. Railroad, 147 N. C. 428; Mayor v. Railroad, 109 Mass. 103; Railroad v. Railroad Comm., 231 U. S. 457; Railroad & N. Co. v. Fairchild, 224 U. S. 510. (5) The Railways Company was chartered by the State for the purpose of voluntarily acquiring, constructing and operating street railways, for public use, in the conveyance of persons and property in the city of St. Louis, with the consent of the said city, and with the reserved right in the State to alter and amend such charter in such manner, and to such extent as might be necessary for the well-being of the State; and, under this reserved right to alter, and amend, and to prescribe and impose duties from time to time in accordance with changed conditions, the State has the right to require the Railways Company to take those steps, necessary to be taken, to extend its transportation facilities for the public use, and for the satisfying of the public needs in the city of St. Louis. Sec. 5, art. 12, Constitution; Shields v. Ohio, 95 U. S. 319-324; Railroad v. New Haven, 203 U. S.

379-388; Stanislaus Co. v. Canal and Irrigation Co., 192 U. S. 201; and authorities cited under points 3 and 4. (6) The new charter provisions of the city of St. Louis undertaking to give the city power to compel street railways to make extensions, being out of harmony and inconsistent with the general laws of the State, are invalid. The power of consent or denial that may be exercised by the city, to the application of the Railways Company, partakes less of contractual than of governmental power. The court will not presume that the city will deny the application of the company, or that it will attempt to make its consent thereto dependent upon conditions inconsistent with the Constitution and general laws of the State. Sec. 23, art. 9, Constitution; Public Service Commission Act, Laws 1913; Hayes v. Railroad, 111 U. S. 228.

WALKER, J.—In April, 1914, complaints were filed with the Public Service Commission praying that an inquiry be made into the character of service rendered by the United Railways Company of the city of St. Louis. The specifications in said complaints were comprehensive and embraced many phases of street railway service. The Commission, after hearing evidence and making such other investigations and inquiries as it deemed proper, made an order, set forth under six headings or subdivisions. The first, third and fourth related to the manner in which the Railways Company was to operate, manage and conduct its cars; the fifth and sixth prescribed the time and manner of the company's acceptance and compliance with the order; and the second required the company within a specified time to apply to the city authorities for permission to construct and operate certain extensions of the company's system as designated in the order. The company formally expressed its willingness to comply with the order except as required by the second subdivision, which is as follows:

"Ordered 2nd, That the United Railways Company, defendant herein, be and it is hereby directed and re-

quired to make application, within thirty days from the effective date of this order, to the proper municipal authorities of the city of St. Louis, Missouri, for the necessary franchises, permits and authority, and to the property owners for the necessary consents, authorizing said defendant company to construct all of the following sections of track, and that the construction of all of said tracks, which may be so authorized, shall be made within the time herein specified.''

Following this the particular lines of the company required to be extended are designated and the times prescribed within which each extension is to be made. Upon the promulgation of this order the company filed a motion for rehearing, and upon its denial made application to the circuit court of the city of St. Louis for a writ of review to determine the validity of that portion of the order to which objection had been made. The circuit court sustained the order of the Commission and the company appeals.

While the proceedings were pending before the Commission the city of St. Louis adopted a new charter, which provides that the city shall have power to regulate rates, quality of use, service and products and methods of conduct and operation of public utilities and at certain times to buy the plant and property of such utilities; and to compel from time to time reasonable extension of facilities for such service. [Sec. 1, art. 1, and sec. 2, art. 19, Charter of St. Louis.]

There is no controversy as to the facts or the regularity of the proceedings and the parties stipulate that the only issues are questions of law, viz., (1) the power of the Commission to order the Railways Company to apply to the municipal authorities of the city of St. Louis for franchises to operate a street railway or extensions thereof in the public streets of said city, and (2) the constitutionality of that portion of the charter of said city authorizing a municipal regulation of public utilities as therein prescribed.

I.  Acts creating public service commissions and defining their powers are comparatively new ventures in legislation.  Their newness, coupled with their compre-

**Decisions of Other States.** hensive character, usually co-extensive with the State, has, as is usual with new laws, caused frequent applications to be made to the courts to secure their construction.  This has been especially true in regard to the Missouri law, although it was but recently enacted.  Despite this fact, the vexed questions here have not received judicial interpretation, and, except by analogy, little aid is to be derived from the construction given to statutes of this character by courts of last resort in other jurisdictions.  The statutes may be, and often are, similar to, if not identical with, our own.  But the organic laws of these states are different from ours.  In construing our own statute, therefore, the plain limitations of our Constitution must, in conformity with one of the elementary rules of construction, always be kept in mind.  It is appropriate

**Constructing Railway in Street: Consent of City.** in this connection that the provision of our Constitution applicable in the construction of the statute here under review should be quoted.  It is as follows:

"No law shall be passed by the General Assembly granting the right to construct and operate a street railroad in any city, town, village or on any public highway without first acquiring the consent of the local authorities having control of the street or highway proposed to be occupied by said street railroad and the franchises so granted shall not be transferred without similar assent first obtained."  [Sec. 20, art. 12, Constitution of Missouri.]

The pertinent parts of the Public Service Act, under which the Commission is seeking to exercise the power here complained of by appellant, is as follows:

"If in the judgment of the Commission, additional tracks, switches, terminals or terminal facilities  . . . or any other property, construction, apparatus, equipment, facilities or device for use by any  . . . street railroad corporation in or in connection with the trans-

portation of passengers . . . ought reasonably to be
provided, or any repairs or improvements to or changes
in any thereof in use ought reasonably. to be made, or
any additions or changes in construction should reason-
ably be made thereto in order to promote the   security or
convenience of the public . . . or in order to secure
adequate service or facilities for the transportation of
passengers . . . the Commission shall, after a hear-
ing, . . . make· and serve an order directing such
repairs, improvements, changes or additions to be made
within a reasonable time and in a manner to be specified
therein, and every . . ⁚ street railroad corporation
is hereby required as directed to make all· repairs, im-
provements, changes and additions required of it
by any order of the Commission   served upon it . . ."
[Sec. 49, Public Service Commission Act, p. 588, Laws
1913.]

The constitutional provision quoted is definite in its
terms; discussion as to its purpose would therefore
seem superfluous.  Under ordinary circumstances little
or no question can arise as to the uses and purposes
of streets and public highways; and the wisdom in con-
fiding their supervision and control to local authorities,
being evident, need not be commented upon.  The Con-
stitution but gives affirmative recognition to these facts.
However, the enactment of the statute creating the Pub-
lic Service Commission to effectuate its purpose in the
supervision of public utilities, among others street rail-
ways, has, under section 49, supra, given or attempted
to give certain powers to the Commission over streets
and highways.  The extent of this power under the Con-
stitution is the matter here to be determined.  While
recognizing the rule that constitutional limitations upon
legislative action must be construed in favor of the
power of the Legislature· and be either expressly de-
clared or clearly implied (State v. Wilson, 265 Mo. 1),
it must also be borne in mind that when so expressed or
implied they are to be construed as mandatory rather
than directory (State ex rel. v. Hitchcock, 241 Mo. 433)
and consequently exclusive in their terms.

It not infrequently occurs that words employed in a constitution or statute are so clear and explicit that an attempt to define them serves but to confuse rather than enlighten. The words "construct" and "operate" as employed in the constitutional provision under consideration are illustrative of this truth. We therefore hazard no further comment as to their meaning and application than to say that to construct as here used means to build upon the street or highway, whether by initial location or extension; and to operate means to use for the purposes of the construction.

The constitutional provision plainly requires as a prerequisite to the enactment of a valid statute for the construction and operation of street railroads that the consent of the local authorities therefor be first acquired. While the language employed in the Constitution, if literally construed, may be held to be directed only to corporations seeking the privilege to construct and operate such public utilities, a reasonable construction of the provision will not justify this limitation upon its meaning; its purpose is not so much to limit the power and define the course to be pursued in securing the right to construct and operate as it is to declare where the power rests which is necessary to be invoked before the rights sought are granted.

The source of this power, viz., the local authorities, having been defined, the terms under which it is granted authorize the conclusion that it is absolute. It is a general rule, applicable here as elsewhere, that constitutional provisions are mandatory; their prohibitions and injunctions must therefore be obeyed. [State ex rel. v. Hitchcock, 241 Mo. 433; 8 Cyc. 762, and cases.] This being true, it is immaterial, so far as the application and extent of the power is concerned, whether the statute enacted in relation thereto be simply permissive, as is usually the case, or mandatory, as in the instant case; a condition precedent to the validity of the statute in any case is that the consent of the local authorities be first obtained. To obviate the application of the Constitution to the statute and as a consequence render the

order of the Commission effective, it is contended by respondents that the statute is either not within or is excepted out of the limitation of the Constitution. The words employed in the Constitution are general and include within their terms any law enacted by the General Assembly in regard to the construction and operation of street railroads. The only limitations are in the designation of the particular class of utilities referred to and the places where they may be constructed and operated. Modifications in the application of the constitutional provision are permissible only in the presence of clearly defined exceptions. We find these neither expressed nor implied and we are consequently not authorized to make them. Subsequent legislation cannot modify the Constitution. It is elementary that in a conflict between the Constitution and a statute the latter must yield. [State ex rel. v. Wabash Railroad Co., 251 Mo. 134; State ex rel. v. C. B. & Q. Ry. Co., 251 Mo. 146.] The creation, therefore, of the Public Service Commission since the adoption of the Constitution and the clothing of it with comprehensive and plenary power in the regulation and control of all public utilities will in no wise modify the course defined by the Constitution as necessary to be observed in the establishment or extension of street railroads.

The purpose of the order here sought to be enforced is to require the appellant to extend its road; that this is sought to be accomplished by indirection is not material; the resultant effect is the same. The order, while not directly requiring the appellant to make the extension, does require it to procure the consent of the proper authorities that (using the language of the order) "the construction of all of said tracks which may be so authorized shall be made within the time herein specified." The purpose of the order is therefore evident, although it is mandatory more by inference than express declaration. However this may be, the very words of the order carry with them a concession that consent is a prerequisite to its enforcement. Consent such as the law recognizes cannot be the

subject of compulsion; its existence depends upon the exercise of the voluntary will of those from whom it is obtained. It is well said in a South Carolina case (Gray v. Walker, 16 S. C. 143) that consent "implies an agreement to that which, but for the consent, could not exist, and which the party consenting has the right to forbid." It is even more graphically stated in a Kansas case (Locke v. Redmond, 6 Kan. App. 76) where it is said that consent "supposes physical power to act, a moral power of acting, and a serious, determined and free use of these powers." The order, therefore, no matter how mandatory may be its terms, is self-limiting. If, as a prerequisite to its enforcement, the appellant be required, as he is, to secure the consent thereto of the local authorities, and after reasonable effort fails, the order becomes inoperative and loses whatever characteristics it may have had, on its face, as a mandate, because it is incapable of enforcement without the precedent procurement of the necessary consent. A permissive order, such as here seeks judicial sanction, is a contradiction in terms and is unknown to the law. A mandatory order is burdened with no modifications and emanates from a source having power to enforce it. Lacking these essentials it is a mere nullity.

This is not true of the remainder of the order made by the respondents, to which appellant has given compliance; its terms are well within the broad and full power given respondents to regulate and control public utilities, which power, so far as exercised, has not contravened any constitutional provision.

Holding, as we do, subdivision 2 of the order to be inoperative for the reasons stated, it has not been deemed necessary to discuss the question as to whether or not the attempted enforcement of said subdivision involves the making of a contract; nor does the extent of the police power of the State enter into the question when the attempted exercise of the same would result in a violation of the organic law.

In the discussion of the question as to the binding force of subdivision 2, we have proceeded upon the

assumption that section 49 of the Public Service Act, which we have quoted, is sufficiently comprehensive to authorize the order for the enforcement of said subdivision, provided same had not been obnoxious to the Constitution. An analysis of said section renders it questionable whether it can be fairly given that construction. While it provides that the Commission may order, for example as applicable to this case, a street railroad, to construct additional tracks and make such changes, improvements and additions as may "promote the security and convenience of the public . . . or secure adequate service or facilities for the transportation of passengers," these powers are to be construed as subservient to and in harmony with the organic law, for it will not be presumed that the Legislature intended to enact an invalid statute. [Lumber Co. v. Mo. Pac. Ry. Co., 216 Mo. 658; State v. Fawcett, 212 Mo. 729.] A more reasonable construction is that while said section is very broad and contemplates the exercise of many powers in regard to the control of public utilities not heretofore granted, the exercise of these powers was intended to be limited to directing that to be done by the public utility which it is authorized to do under its charter and not that it be compelled, as a prerequisite to a compliance with the order, to procure from the State other rights than those already granted. [Towers v. United Rys. & Elec. Co., 95 Atl. (Md.) 170.]

That the Public Service Commission has ample power to order the construction of such sidetracks, switches, cross-overs and terminals as are pure-
Scope of ly incidental to the operation of main lines is
Statute. not questioned; but the Legislature has no constitutional authority, did not intend, and hence the Commission is not empowered, to compel public utilities, in the absence of authority in their charters, to enter new territory by the extension of their lines of roads.

Furthermore, the Public Service Commission, being a creature of the statute, can only exercise such powers as are expressly conferred on it; and the statute conferring such powers, to authorize action thereunder,

should clearly define their limits. Nothing should be left to inference or seek refuge in implication or the exercise of a discretion. The language of the New York Court of Appeals in People ex rel. v. Willcox, 200 N. Y. l. c. 431, 94 N. E. l. c. 215, is apposite in this connection; that: "The public service commissions were given extensive powers; but they should not be extended by implication beyond what may be necessary for their just and reasonable execution. They are not without limits, when directed against the management, or the operations, of railroads, and the commissions cannot enforce a provision of law, unless the authority to do so can be found in the statute. . . . Nor should they reach out for dominion over matters not clearly within the statute." Under this rule we hold, in addition to the other reasons urged against the operative force of that part of the order under consideration, that the terms of section 49 are not sufficiently definite and explicit to empower respondents to order the appellant to take the initiative in procuring the required consent to authorize the extension of its road and that it was not so intended by the Legislature.

II. The validity of certain sections of the charter of the city of St. Louis is assailed as being City Charter. in conflict with the Public Service Act. These sections, so far as pertinent to this inquiry, are as follows:

That the city shall have power "to regulate the construction, maintenance, equipment, operation, service, rates and charges of public utilities, and compel, from time to time, reasonable extensions of facilities for such service." [Clause 13, sec. 1, art. 1, Charter, City of St. Louis.]

"The Board of Aldermen shall at all times have full power, to be exercised by ordinance, over all public utilities now or hereafter existing in the city, and may regulate the charges for the use, service or product thereof and establish whatever requirements may be necessary to secure efficient use, service or products,

and no terms or conditions contained in any grant shall limit or impair this power." [Sec. 2, art. 19, Charter, City of St. Louis.]

While not material to the validity of these sections, it is a matter of historical interest that they were adopted as a part of the new charter of the city of St. Louis which became operative about two years after the enactment of the Public. Service Act. The purpose of the latter was to provide a uniform system throughout the State for the regulation and control of public utilities, and to create and establish a board clothed with ample administrative powers to investigate, hear and determine all matters concerning the conduct and management of such utilities, whether complaints in regard thereto were submitted by the representatives of the latter or their patrons. In thus providing by a State law a means whereby all questions of the character referred to might be heard and determined, it was evidently contemplated by the Legislature that local regulations, such as municipal charters and ordinances adopted for a like purpose as the State law, should, upon the enactment of the latter, become thereby superseded or abrogated; or, if adopted later than the State law, that they should be inoperative and void, otherwise confusion and the consequent defeat of the purpose of the statutes would result from conflicts of authority which would inevitably arise. While the freeholders in certain municipalities, for example the city of St. Louis, may, under the express authority of the Constitution (Sec. 16, art. 9), frame and adopt a charter for their government, they do not thereby acquire the right to assume all powers the State may exercise within its limits, but only those incident to it as a municipality or which concern matters of purely local government. Judge DILLON (Mun. Corp. [5 Ed.], sec. 63), in discussing the rule as above announced, says in effect: "While a city may frame a charter for its government as a city, including all that is necessary to its conduct and management as a municipality, it does not thereby incorporate into its government all the power the State has for the protection of

the rights and the regulation of the duties of the inhabitants of such city as between themselves."

We have several times given express approval to this rule, notably in State ex rel. v. Telephone Co., 189 Mo. 83, where, in defining the meaning of the Constitution in providing that certain cities may frame charters for their own government, we said that "this provision is to be limited as stated in the foregoing rule," and, further elaborating the application of the doctrine, declared that the Constitution does not "confer unlimited power on the city to regulate by its charter all matters strictly local, for there are many matters local to the city requiring governmental regulation which are foreign to the scope of municipal government. In none of the cases that have been before this court bringing into question the charters of St. Louis and Kansas City under the Constitution of 1875 (Sec. 16, art. 9) have we given to the constitutional provision any broader meaning than above indicated." (Citing many Missouri cases.)

The power of the freeholders of the city of St. Louis in framing and adopting the present charter must be held, when properly exercised, to have been limited as in the rule stated. The control and management of public utilities had then been provided for by the Public Service Commission Act; and such control was not a matter of purely local or municipal concern, but one subject to the State legislative will. The power having been thus classified and defined, the attempt of the framers of the charter to also provide for such control constituted an unwarranted invasion of a province clearly within the purview of the State. In so far, therefore, as clause 13 of section 1 of article 1 and section 2 of article 19 of the present charter of the city of St. Louis attempt to provide for the regulation of public utilities for the management and control of which express provision has been made in the Public Service Act, such clause and sections of said charter are declared to be inoperative and of no effect.

In consequence of the foregoing conclusions the judgment of the circuit court is reversed and remanded with directions that it enter a judgment setting aside and annulling the order herein of the Public Service Commission. All concur; *Blair* and *Williams, JJ.*, in paragraph two and in the result.

WOODSON, J. (concurring)—I fully concur in the opinion filed in this case, except as to that part of it which I understand holds that section 49 of the Public Service Commission Act, page 588, Laws 1913, empowers the Commission to order the company to construct and operate new and additional main lines of street railroads, as distinguished from what are generally designated as switches, side tracks, cross-overs and terminals, which are used in conjunction with main lines, to assist and facilitate the transportation of passengers over main lines the company has voluntarily constructed. Such side tracks, etc., are purely incidental to the operation of the main lines, and the Commission has and should have full and ample power to compel their construction; but I do not believe the Legislature intended or has the constitutional authority to compel the company, in the absence of an agreement by charter, or otherwise, to go into new territory and construct new main lines and operate cars over them for the transportation of passengers. That would compel the company, against its will, to invest its means in the construction of lines and conduct a transportation business, perhaps at a dead loss from start to finish. I can conceive nothing which would be more hazardous to capital than that, or which would more completely deprive a person of his property without his consent or without due process of law.

I might be perfectly willing to construct a railroad from Jefferson City to Columbia, and operate cars over the same for the transportation of freight and passengers, but that is no reason why I should be compelled to extend the road north and west to the Iowa line for the same purposes; the former might be a good and paying

investment, while the latter might be a bad investment and a dismal failure.

I know of no law or morals which require anyone to invest his means in a new business enterprise; but where he owns a public franchise of course he should be required to so use it as to yield the greatest good to the public, consistent with earning a reasonable remuneration on the investment.

For the reasons stated, I concur in the result.

## ON MOTION TO MODIFY OPINION.

PER CURIAM:—The right to build a street railroad on Lee Avenue may be conceded to have been granted to the predecessor of the United Railways Company, as well as the right of the former to transfer its franchise to the latter company. This latter right is authorized under the 8th subdivision of section 3316, Revised Statutes 1909. The question confronting us here, however, is how long does this privilege or right continue? It was granted to the original company in April, 1892, and in April, 1893, the right was extended, no limitation being stated in the ordinance of extension. Almost twenty-four years have therefore elapsed since the extension of the right, and yet the attitude of the company holding the same has been one of complete inactivity. Under this state of facts is the presumption authorized that the company has abandoned its purpose of extending its line, and if this be true, can it, after the expiration of the period of time stated, now exercise the right originally conferred? If it cannot enforce this right, then it does not exist; and if it does not exist the Public Service Commission should not now be authorized by reason of the original grant to direct the railroad company's conduct in regard to said street as the Commission is empowered to do concerning any other operative portion of the company's franchise. Under the common law an easement may be lost by non-user in twenty years. [3 Bl. Com. 262; Given v. Wright, 117 U. S. 648.] We need not concern ourselves as to

whether or not judicial action is necessary to render operative the forfeiture or loss of the right of the corporation to occupy the street, because the determination of the question here under consideration does not involve the forfeiture of the company's charter or all of its franchises, but simply one of same, or a right granted under such charter. It may be conceded that a judicial forfeiture is necessary if the right to exercise the charter be involved, but the consent of a municipality to the occupation of its streets by a railroad company, while involving a grant of power to the railroad company and the right to exercise such power when granted, is not technically speaking a contract, but is in the nature of a privilege or license extended to the company so as to secure facilities for the accommodation and convenience of its citizens. [G. C. Ry. Co. v. G. C. S. Ry. Co., 63 Tex. 529; Chicago City Ry. Co. v. People ex rel. Story, 73 Ill. 541.] The right must of course be based on a charter, but it is but one of the rights granted thereunder. This being true, the conclusion is authorized that the failure by the corporation to exercise this right may be lost through lapse of time, and that a judicial forfeiture necessary when the existence of the charter is involved is not necessary in a case of this character to render the particular forfeiture effective. A ruling illustrating the correctness of this conclusion is to be found in the case of Oakland R. R. Co. v. Railroad, 45 Cal. 373, where a corporation was granted the right to construct and operate a railway in the streets of a city, but the work was to be commenced within six months and completed within five years, otherwise the privileges were to cease and be forfeited. The work was not commenced or completed within the time specified. Thereafter the right to use the street for like purposes was granted to another corporation; a contest arising between the two corporations, the former was held to have forfeited its franchise and a judicial proceeding to effect that end was not held to be necessary. A like ruling under a similar state of facts is to be found in N. Y., H. & N. R. R. Co. v. Boston,

H. & E. R. R. Co., 36 Conn. 196; In the Matter of Brooklyn, W. & N. Ry., 72 N. Y. 245, and In the Matter of Kings County Elevated Ry. Co., 41 Hun, 425. Our own court, in State ex inf. Jones v. Light & Development Co., 246 Mo. 618, where the grantee of the franchise was authorized to place wire, tubes and cables conveying electricity for the production of light and power along the streets, alleys and public places of the city of St. Louis, failed for a long period of time to exercise its rights under said franchise, the same was held to be a wilful non-user and a practical abandonment of any rights granted thereunder. In the subsequent case of State ex inf. v. West End Light & Power Co., 246 Mo. 653, it was held that the law will be strictly construed as against the existence of the particular franchise and in favor of the public, and that where it is shown that the company has made no effort to exercise the franchise for twenty years after the granting of same, such non-user works a forfeiture. These cases, however, were proceedings in *quo warranto*.

Despite the fact that these rulings were rendered in cases in which judicial action was invoked to forfeit the franchises, they constitute persuasive arguments in favor of the conclusion that when the facts, as in the instant case, involve the right to use the street, Lee Avenue, for the purpose of a street railway and same has not been exercised by the railway company for the period of time stated, the right cannot be enforced by the company and the converse of the proposition must be true, that the Public Service Commission is not authorized to enforce action by the railway company.

That the right of the Commission to direct the action of the railway company under its original grant to construct its road upon Lee Avenue does not now exist finds support by analogy in our ruling in State ex rel. v. Associated Press, 159 Mo. 410. This was an application for a writ of mandamus to compel the Associated Press to grant relator certain privileges which had been possessed under its charter by the respondent.

In ruling upon the right of the relator to the writ. we held that whatever power the respondent had possessed under its franchise in regard to the matter in question, it had abdicated or lost same through non-user and hence the writ was denied. The motion, therefore, to modify the opinion is overruled.

BOND, J. (concurring in Per Curiam Opinion).— Whether the Railways Company had abandoned its franchise by twenty-four years of non-user, was a judicial question (State ex rel. v. Railway Co., 140 Mo. l. c. 552; Roanoke Inv. Co. v. Railroad, 108 Mo. l. c. 64) which it was not the province of the Public Service Commission to determine. Hence that body had no authority to direct the appellant under the circumstances disclosed by the record, to begin work anew under the franchise granted to its predecessor in April, 1892, and its order to that effect was properly set aside in the original opinion. Wherefore there is no merit in the motion for a rehearing.