State v. Washburn Waterworks Co. 182 Wis. 287.

STATE, Appellant, vs. WASHBURN WATERWORKS COM-
PANY, Respondent.

*November 17—December 11, 1923.*

*Public utilities: Extension of water mains: Jurisdiction of railroad
commission: Statutes: Specific and general provisions.*

1. A specific provision in a statute relating to a particular sub-
   ject must govern in respect to that subject as against general
   provisions in other parts of the statute which might other-
   wise be broad enough to include it.  p. 292.
2. Sub. (2), sec. 1797m—87, Stats., which empowers municipalities
   to require public utilities to make reasonable and necessary
   extensions and additions to their plants, being amendatory
   of the Public Utilities Law, and there being nothing in the
   general law expressly delegating to the railroad commission
   any such power, the commission is without authority to order
   an extension of water mains by a public utility operating its
   plant within a municipality.  p. 297.

APPEAL from a judgment of the circuit court for Dane
county: GEORGE THOMPSON, Judge. *Affirmed.*

For the appellant there was a brief by the *Attorney Gen-
eral* and *Robert M. Rieser,* deputy attorney general, and
oral argument by *Mr. Rieser.*

For the respondent there was a brief by *Fawsett & Smart*
of Milwaukee, and oral argument by *Edward M. Smart.*

*Frederic J. Eaton* of Oshkosh, as *amicus curiæ.*

JONES, J.  This is an action brought by the State on the
request of the railroad commission to recover penalties for
the failure of the defendant to comply with an order of the
commission to extend its water mains in the city of Wash-
burn.  It is alleged in the complaint as a first cause of
action that the defendant is a corporation, a public utility
engaged in the operation of its plant, and that on the 7th
of December, 1917, the railroad commission of Wisconsin,
acting within its jurisdiction in a proceeding brought by
John Horan and twenty-five other persons, entered an order

that defendant extend its water mains at its own expense in such manner as to provide water service on West Fifth street between certain points; that June 1, 1918, was considered a reasonable time before which the work should be completed; that no action had been commenced to vacate the order and that the same was an outstanding, valid order; that the extension was not completed on the 1st day of June, 1918, and that defendant became liable to a penalty of from $25 to $1,000 for each and every day thereafter. Approximately allegations were made for 1,073 causes of action and judgment was demanded for a total sum of from $26,825 to $1,073,000, with costs.

The amended answer admitted the signing and filing of the order referred to in the complaint, but alleged that it was signed individually and separately by the members of the commission, and that the commission as a body did not meet and deliberate or make any finding or order, and that the order was void for that reason.

The answer admitted that no action had been taken to review the order; that the defendant had not complied with it, and then alleged that the water mains of the defendant were so situated that it was feasible and practicable to make an extension in a manner directed in the order and by another route which was described, and that for that reason and other reasons the order was indefinite and void.

There were further allegations that secs. 1797m—95 and 1797m—98, Stats. 1917 (sections relating to penalties), and all amendments thereof, and the corresponding sections in ch. 499, Laws 1907, and amendments thereof, are void and in violation of sec. 9, art. I, of the constitution of Wisconsin, and sec. 1 of the Fourteenth amendment to the constitution of the United States.

The answer further alleged that the city of Washburn had at no time ordered defendant to make extensions along said Fifth street west, or granted authority to construct such mains in said street, and that until such authority

should be given the railroad commission had no jurisdiction in the premises.

At the trial a jury was waived and the court found that the railroad commission acted as a body in making the order in question and that it was sufficiently definite and certain; that prior to making the order the city of Washburn had neither taken action nor refused to take action in respect to said extension, and that the commission had made the order under claim of the right to exercise original, concurrent jurisdiction.

As conclusions of law he found that the commission had no jurisdiction in the proceeding and that the common council alone had original jurisdiction; and that the complaint should be dismissed without costs. Judgment was entered accordingly.

Defendant relies on sec. 1797m—87, Stats. 1917, as a ground for noncompliance with the order in question. That section is as follows:

"Every municipal council shall have power:

"(1) To determine by contract, ordinance or otherwise the quality and character of each kind of product or service to be furnished or rendered by any public utility furnishing any product of service within said municipality and all other terms and conditions not inconsistent with sections 1797m—1 to 1797m—109, inclusive, upon which such public utility may be permitted to occupy the streets, highways or other public property within such municipality and such contract, ordinance or other determination of such municipality shall be in force and *prima facie* reasonable. Upon complaint made by such public utility or by any qualified complainant as provided in section 1797m—43, the commission shall set a hearing as provided in sections 1797m—45 and 1797m—46 and if it shall find such contract, ordinance or other determination to be unreasonable, such contract, ordinance or other determination shall be void.

"(2) To require of any public utility by ordinance or otherwise such additions and extensions to its physical plant within said municipality as shall be reasonable and neces-

sary in the interest of the public, and to designate the location and nature of all such additions and extensions, the time within which they must be completed and all conditions under which they must be constructed subject to review by the commission as provided in subdivision 1 of this section.

"(3) To provide for a penalty for noncompliance with the provisions of any ordinance or resolution adopted pursuant to the provisions hereof.

"(4) The power and authority granted in this section shall exist and be vested in said municipalities, anything in sections 1797m—1 to 1797m—109, inclusive, to the contrary notwithstanding."

The construction to be given to this section is the only question presented. It is conceded by the state that the municipality had the right to order the extensions, but that the right was merely concurrent. It is conceded by the defendant that the railroad commission has jurisdiction in such a case, but that it is only appellate.

Counsel for the plaintiff base their claim for original jurisdiction on general language contained in various provisions included in secs. 1797m—1 to 1797m—109, inclusive. By sec. 1797m—1 it is provided that the term "service" by the terms of the statute is used "in its broadest and most inclusive sense." By sec. 1797m—2 it is provided that "The railroad commission of Wisconsin is vested with power and jurisdiction to supervise and regulate every public utility in this state and to do all things necessary and convenient in the exercise of such power and jurisdiction."

Sec. 1797m—43 provides for the making of complaint to the commission by qualified persons or organizations if any public utility service "is insufficient . . . or inadequate or cannot be obtained;" and provides for investigation by the commission.

Sec. 1797m—46 provides that if, upon such investigation, any service complained of is "insufficient, unreasonable, . . . or that any service is inadequate or that any reasonable service cannot be obtained," the commission may make an

order substituting for such service other service, and may make such other order respecting any such changes in such service as shall be just and reasonable.

Sec. 1797$m$—60 provides that whenever, upon such investigation, the commission shall find any service "insufficient, unreasonable, . . . or inadequate or that any service which can be reasonably demanded cannot be obtained," it shall determine and by order fix the reasonable service to be furnished.

Defendant's counsel argue that sec. 1797$m$—87 is not at all inconsistent with the co-existence of jurisdiction of the commission over the same subjects and that it manifests no intent to nullify or repeal the earlier sections.

Counsel further argue that if sub. (2) of sec. 1797$m$—87 is interpreted to limit the jurisdiction of the commission to appellate jurisdiction, sub. (1) must receive the same interpretation, and the public utility law would be robbed of much of its effectiveness. It is argued that the general act granted to the commission broad and comprehensive powers; that by the section under consideration concession was made to the wish of municipalities to have some hand in the control of their own local matters, subject to the decision of the commission as to reasonableness of such action, but that it was not intended to limit the plenary powers granted to the commission.

Counsel cite and quote largely from *La Crosse v. La Crosse G. & E. Co.* 145 Wis. 408, 130 N. W. 530, and *Calumet Service Co. v. Chilton,* 148 Wis. 334, 135 N. W. 131, as authorities showing the broad and comprehensive powers conferred upon the commission and the wide extent of its jurisdiction.

The powers thus conferred are indeed very broad and a generation ago would have been deemed quite revolutionary. The commission has power to compel certain utilities to grant facilities to others; to require a uniform system of accounting and bookkeeping; to determine proper and ade-

quate rates of depreciation; to require reports to be furnished to the commission showing the details of the business; to require the filing with the commission of rate schedules to be open to the public. The commission is given power to discover and declare reasonable rates, tolls, charges, and schedules; and if those existing are found to be unreasonable, discriminatory, or preferential, to substitute others. Under certain conditions the commission may 'exclude competition between public utilities; under other conditions the commission may determine the compensation to be paid and the conditions of sale when municipalities seek to acquire public utilities. In a general way these are some of the broad powers enumerated in the statute.

It is a control of which utilities at times complain as irritating and annoying, but which at other times they welcome as relieving them from still more irritating burdens and interference. It is a control, however, which the general public seems to regard as conducive to the public good, and we have no wish to qualify the expressions of approval of the general purpose and scope of the act and the excellent manner in which it has been administered which are to be found in the former decisions of this court.

But we are now called upon for the first time to construe a section of the statute which relates to a particular subject. Counsel for the defendant invoke a very familiar rule of statutory construction. That rule is that a specific provision in a statute relating to a particular subject must govern in respect to that subject as against general provisions in other parts of the statute which might otherwise be broad enough to include it.

The rule has been stated in a different form, as follows, in the opinion by Mr. Justice PAINE in *State ex rel. Lutfring v. Gœtze,* 22 Wis. 363, 365:

"Where a general intention is expressed, and the act also expresses a particular intention incompatible with the general intention, the particular intention is to be considered

in the nature of an exception. While, if a particular thing is given out or limited in the preceding parts of a statute, this shall not be taken away or altered by any subsequent general words of the same statute." 1 Lewis' Sutherland, Stat. Constr. (2d ed.) § 275; 25 Ruling Case Law, 1010; *Ward v. Smith,* 166 Wis. 342, 165 N. W. 299; *State ex rel. Donnelly v. Hobe,* 106 Wis. 411, 82 N. W. 336; *Mason v. Ashland,* 98 Wis. 540, 74 N. W. 357.

In the language of an old maxim, "A thing given in particular shall not be tolled by general words."

The section now under consideration was not a part of the bill as originally introduced, but was incorporated as an amendment. Sub. (2) empowers municipalities to require public utilities to make reasonable and necessary extensions and additions to their plants and to designate the location and nature thereof, and the time of completion and the conditions under which they are to be constructed, subject to the review of the commission.

Here in very plain language was a grant or reservation of power to municipalities. Was it the legislative intent that it should be a power to be shared by the commission; a power to be entirely divested if another authority first undertook its exercise? We do not find in the long general statute any language expressly delegating to the commission any such power as this section confers upon municipalities. We do find that by the same section the right of review is given to the commission. If the power to initiate the proceeding by the commission exists, it must be spelled out of such general provisions as are quoted above.

It was argued by counsel for the state that this section was adopted as a compromise, as a concession to the natural wish of municipalities to retain some degree of home rule in their local affairs. We are inclined to the belief that this is true and we think that the concession should be taken at its face value.

It is argued that the legislature deemed it a sufficient concession to home rule that cities should have concurrent ju-

risdiction subject to review by the commission, and it is not to be presumed that there was an intention that this section should create an exception to the broad power of regulation over public utilities conferred upon the commission. If the language of the section in question were ambiguous and if we were called upon to inquire into the supposed legislative intent, it could be said with equal if not greater reason that the legislature may have believed that the control over the extensions of public utilities should be left to the local authorities, in order that they might adopt and follow some consistent policy in that respect. The legislature may have had the view that common councils have the control over public streets; that they and their officials have more intimate knowledge than the commission could easily acquire of the uses made of the streets by different utilities, and the complications which sometimes arise.

As stated in the brief of defendant's counsel, cities are "interested in determining the size of the mains, their depth below the surface, their relationship to gas, electric, and other underground equipment; the relationship to paving and tearing up of pavement; the interruption of travel; the question as to which streets should be torn up and used, and which should not."

The legislature may have believed that these were matters peculiarly within the knowledge of city officials and that they should be charged with the duty as well as the responsibility of making the initial decision, especially as their decision is made the subject of review by the commission.

Counsel for the defendant cite and quote from a well reasoned opinion of the Indiana public service commission, in which, under a statute nearly identical with our own, they declined to take original jurisdiction over the extension of gas mains. *Board of Public Works v. LaPorte G. & E. Co.* Pub. Util. Rep. 1920D, p. 497.

The question of jurisdiction of the commission to compel

the extension of a street railway came up in the case of
*Merrill v. Merrill R. & L. Co.* 5 Wis. R. R. Comm. Rep.
418. The commission there held as follows (p. 425):

"The public utilities law has vested in common councils
the power to compel extensions and additions to public util-
ity plants when necessary to serve the public requirements.
The common council is the proper body to which such au-
thority should be given, if possible, over all public utilities,
including street railways. It has control of the streets and
is best situated, in the first instance, to determine what ex-
tensions and additions are required and where they should
be made. Such authority, however, has not yet been con-
ferred by the legislature upon common councils or this com-
mission in respect to street railways, and hence we are with-
out jurisdiction of the subject matter of the petition."

This decision was followed in *Racine v. Milwaukee E. R.
& L. Co.* 14 Wis. R. R. Comm. Rep. 148.

The legislature has since amended the statute by giving
authority to the commission, on public hearings and after
notice to all parties interested, to order the extension of
street railway lines into adjoining municipalities. Sec. 1863,
Stats.

It is argued by counsel for the State that the decisions
of the railroad commission above cited have been modified
or reversed by the following decisions of this court: *Chi-
cago, St. P., M. & O. R. Co. v. Railroad Comm.* 178 Wis.
293, 189 N. W. 150, and *Waukesha G. & E. Co. v. Railroad
Comm.* 181 Wis. 281, 194 N. W. 846.

In the first of these cases it was held that the railroad
commission has jurisdiction to order a connecting track
between two railroads at a crossing not at grade where such
track is necessary and its construction is not unreasonable.
This ruling was made under sec. 1797—11, Stats., which
makes express provision that all railroads shall afford all
reasonable and proper facilities for the interchange of
traffic between their respective lines for forwarding and de-

livering passengers and property, and it was held that it was the duty of the commission to see that the statutory requirements were complied with.

In the other case referred to, the questions at issue related to rates and valuation and just compensation for public utilities. In both of these cases there were express provisions conferring upon the commission jurisdiction to act. We do not think that either of these cases is inconsistent with the view earlier taken by the commission as to its want of jurisdiction to order extensions.

As already stated, plaintiff's counsel rely on other decisions of this court as sustaining the jurisdiction claimed, but the only language called to our attention which refers to the section now considered is the following in an opinion by Mr. Justice MARSHALL in *Calumet Service Co. v. Chilton,* 148 Wis. 334, 357, 135 N. W. 131:

"The municipality as a consumer, as well as representative of its inhabitants, is made competent to challenge before the commission the reasonableness or justness of any of the rates, tolls, charges, or schedules, or anything affecting efficient performance of the public utility duties. Full power in this field is given the commission for efficient regulation, in harmony with the requirement that the service shall be efficient and charges reasonable. Sec. 1797*m*—43 and associate sections. Ample power as regards police regulation is reserved to the municipality. Sec. 1797*m*—87. Subject to the special right reserved to the city, not having to do with rules and charges for service, the whole field is placed under the supervision of the commission with power to enforce the dominant purpose of the grant to render it as certain as practicable that all public utility service rendered 'either directly or indirectly to or for 'the public' shall be reasonable as to character, and reasonable and just as to charges."

It will be seen that, although the broad power of the commission is recognized, there is also recognized the limitation made by the section under consideration.

The power given to municipalities to order the extensions is conferred in the plainest language. Whether the general language of the statute as to compelling adequate service would have sufficed to give power to order this extension, in the absence of sec. 1797m—87, Stats., it is unnecessary to decide.

That section is an integral part of the statute and cannot be disregarded by the court. It would have been easy for the legislature in plain language to provide that the commission should have the right to institute proceedings of the kind in question if that had been the legislative intent. Of course the statute could have been so framed as to give to the commission and to cities concurrent jurisdiction, although such statutes are unusual and are open to objection. Such concurrent jurisdiction of two authorities over the same subject opens the way to conflicting decisions and disagreements prejudicial to the public welfare. In a New York case there was a statute giving the railroad commission jurisdiction over railroads which was claimed to be broad enough to authorize regulation concerning health and sanitation. There were other special statutes creating a board having jurisdiction over the same subject. It was held that there was no concurrent jurisdiction. *People ex rel. N. Y., N. H. & H. R. Co. v. Willcox,* 200 N. Y. 423, 94 N. E. 212.

The difficulties which may arise when there is concurrent jurisdiction over subjects of this character was well illustrated in *State ex rel. United R. Co. v. Public Service Comm.* 270 Mo. 429, 192 S. W. 958, 198 S. W. 872.

We are not convinced by the argument of counsel for the State that the construction we are giving to sub. (2), sec. 1797m—87, Stats., would rob the commission of its effectiveness because the same construction would necessarily be given to sub. (1). Sub. (2) deals with a particular subject, and we do not see how we can give it effect and at the same

time hold that it confers only concurrent jurisdiction.   Sub. (1) is much more general and might give rise to various opinions concerning its effect.   We are not now called upon to construe it.

We conclude that the railroad commission had no jurisdiction to make the order in question.

*By the Court.*—Judgment affirmed.