James B. BRENNAN, in his official capacity as City Attorney of the City of Milwaukee, and individually as a resident and taxpayer of the City of Milwaukee, and as a representative of a class of residents and taxpayers of the City of Milwaukee, Plaintiff-Appellant,

v.

EMPLOYMENT RELATIONS COMMISSION of the State of Wisconsin, and Milwaukee Police Association, Defendants-Respondents.

Court of Appeals

*No. 82–906. Submitted on briefs January 12, 1983.—*
*Decided February 23, 1983.*
(Also reported in 331 N.W.2d 667.)

For the plaintiff-appellant the cause was submitted on the briefs of *Thomas E. Hayes,* deputy city attorney, and *Grant F. Langley* and *Patrick B. McDonnell,* assistant city attorneys.

For the defendant-respondent Employment Relations Commission the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *David C. Rice,* assistant attorney general.

For the defendant-respondent Milwaukee Police Association the cause was submitted on the brief of *David L. Walther* and *Patricia L. Grove* of *Walther & Halling* and *Gerald Boyle,* all of Milwaukee.

Before Decker, C.J., Moser, P.J., and Wedemeyer, J.

DECKER, C.J. James Brennan appeals from a judgment holding sec. 111.70(4)(jm), Stats., which governs arbitration for the Milwaukee Police Department, to be constitutional. Brennan contends that the statute violates his equal protection rights, as well as Wis. Const. art. IV, secs. 31(9) and 32 which prohibit special laws and require general laws to be uniform statewide. We agree with the trial court that no such violation exists and accordingly affirm.

Brennan originally brought suit both in his capacity as Milwaukee City Attorney and as a private property owner in Milwaukee in order to have secs. 111.70(4) (jm) and 111.77(8), Stats., declared unconstitutional. On this appeal, Brennan's challenge is limited to sec. 111.70(4)(jm) only.

The collective bargaining agreement between the city of Milwaukee (city) and the Milwaukee Police Association (MPA) expired December 31, 1980. Six days later, the MPA petitioned the Wisconsin Employment Relations Commission (WERC), pursuant to sec. 111.70(4) (jm)1, Stats., for the appointment of an arbitrator to determine the disputed terms of the successor agreement. On March 12, 1981, the WERC found that the city and the MPA had reached a bargaining impasse and ordered the parties to proceed to final and binding arbitration pursuant to sec. 111.70(4)(jm). This order led to Brennan's suit.

The trial court initially dismissed Brennan's complaint for the stated reason that he had a conflict of interest individually and in his official capacity as city attorney. The constitutionality question was not reached. Brennan appealed to this court. In *State ex rel. Brennan v. Branch 24 of the Circuit Court,* 104 Wis. 2d 72, 310 N.W. 2d 629 (Ct. App. 1981), we held that no such conflict of interest existed and reversed the judgment. The trial

court then determined that sec. 111.70(4)(jm) was constitutional. Brennan again appeals.

Each legislative act is presumed constitutional, and a heavy burden is placed on the party challenging its constitutionality. Any doubt must be resolved in favor of constitutionality. *Village of Menomonee Falls v. Michelson,* 104 Wis. 2d 137, 143, 311 N.W.2d 658, 661 (Ct. App. 1981).

Brennan first contends that sec. 111.70(4)(jm), Stats., is special legislation because its statutory title, which refers to Milwaukee, evinces a legislative intent that refers only to Milwaukee. We disagree. The statute begins as follows:

> (jm) *Binding arbitration, Milwaukee.* This paragraph shall apply only to members of a police department employed by cities of the 1st class. If the representative of members of the police department, as determined under par. (d), and representatives of the city reach an impasse on the terms of the agreement, the dispute shall be resolved in the following manner: . . . .

Brennan contends that the use of a word in the title to a statute must be viewed as at least manifesting legislative intent as to its meaning. *Nottelson v. DILHR,* 94 Wis. 2d 106, 118–19 n 11, 287 N.W.2d 763, 769 n. 11 (1980). Titles of statutes, however, are not part of the statutes. Sec. 990.001(6), Stats. While they may be resorted to in order to resolve a doubt as to statutory meaning, we will not resort to them in order to create a doubt where none would otherwise exist. *Wisconsin Valley Improvement Co. v. Public Service Commission,* 9 Wis. 2d 606, 618, 101 N.W.2d 798, 804 (1960).

Here, the language of the statute itself is plain: "This paragraph shall apply only to members of a police de-

partment employed by cities of the 1st class." The mention of Milwaukee in the title is evidently a recognition by the revisor of statutes that Milwaukee is the only Wisconsin city of the first class and has been for decades.[1] Such does not make the legislation special, however, since the plain language of the statute encompasses all cities of the first class and clearly will apply, should there be others besides Milwaukee in the future. It is within the power of the legislature to classify cities into four classes and enact legislation applicable only to the various classes of the cities without such enactments becoming special, private or local laws. *State ex rel. Teweles v. Public School Teachers' Annuity and Retirement Fund Trustees*, 235 Wis. 385, 391, 291 N.W. 775, 777 (1940).

We also reject Brennan's related argument that sec. 111.70(4)(jm)11, Stats., constitutes a special or private character because it specifies Milwaukee county circuit court as the place for review of arbitrators' decisions. Originally, the specified place was Dane county circuit court; this was changed to Milwaukee county by sec. 213, ch. 449, Laws of 1977. In view of the long history of Milwaukee as the only qualified city of the first class, we are not persuaded that the place for review specified leads to any conclusion that the statute is special in nature.

Brennan next argues that an ambiguity is created by the interplay between secs. 111.70(4)(jm) and 111.77 (8), Stats., and that therefore, the title of sec. 111.70

---

[1] Section 62.05, Stats., sets forth the criteria for the classification of cities. Although subsec. (1)(a) states that "[c]ities of one hundred and fifty thousand population and over shall constitute cities of the first class," Madison, the only city except for Milwaukee with such a population, is not a city of the first class, evidently having not fulfilled the additional requirements for achievement of that status prescribed in subsec. (2).

(4) (jm) may be looked to in order to determine statutory intent. We disagree.

Section 111.70 (4) (jm), Stats., sets forth binding arbitration rules only for "members of a police department employed by cities of the 1st class." Section 111.77 (8), Stats., limits the application of the arbitration format for the various listed municipal employes to "cities [not] having a population of 500,000 or more nor to cities, villages or towns having a population of less than 2,500." Brennan argues that ambiguity would arise in determining under which statute a city of the first class with a population between 150,000 and 500,000 would arbitrate. We conclude there is no ambiguity.

Section 111.70 (4) (jm), Stats., clearly limits its application to "cities of the 1st class," pursuant to the classifications set forth in sec. 62.05, Stats. Section 111.77 (8), Stats., uses no such technical or legal term to define its application; population figures alone govern. We find no difficulty in concluding that sec. 111.70 (4) (jm) is specific where sec. 111.77 (8) is general.

It is a longstanding canon of statutory construction that specific provisions relating to a particular subject must govern in respect to that subject as against general provisions in other parts of the law which might otherwise be broad enough to include it. *See, e.g., State v. Washburn Waterworks Co.*, 182 Wis. 287, 292, 196 N.W. 537, 539 (1923). Section 111.70 (4) (jm), then, governs all cities of the first class; sec. 111.77 (8) governs those within its population limits not already governed by sec. 111.70 (4) (jm). Since we find no ambiguity, we need not and cannot look to the statutory title for guidance.[2]

---

[2] We note in passing, however, one eventuality apparently unforeseen by both Brennan and the legislature. Should Wisconsin ever be possessed of a city of over 500,000 population but which was not a city of the first class, neither statute would apparently

Brennan next addresses the differences in procedure under these two arbitration statutes and argues that Milwaukee is "deprived of the statutory criteria which it needs in order to properly defend itself when arbitrating with members of its police department." We cannot agree.

Brennan founds this conclusion upon differences in the two statutes in the factors to be considered by the arbitrator. Section 111.77 (6), Stats., reads as follows:

(6) In reaching a decision the arbitrator shall give weight to the following factors:
(a) The lawful authority of the employer.
(b) Stipulations of the parties.
(c) The interests and welfare of the public and the financial ability of the unit of government to meet these costs.
(d) Comparison of the wages, hours and conditions of employment of the employes involved in the arbitration proceeding with the wages, hours and conditions of employment of other employes performing similar services and with other employes generally:
1. In public employment in comparable communities.
2. In private employment in comparable communities.
(e) The average consumer prices for goods and services, commonly known as the cost of living.
(f) The overall compensation recently received by the employes, including direct wage compensation, vacation, holidays and excused time, insurance and pensions, medical and hospitalization benefits, the continuity and stability of employment, and all other benefits received.
(g) Changes in any of the foregoing circumstances during the pendency of the arbitration proceedings.
(h) Such other factors, not confined to the foregoing, which are normally or traditionally taken into consideration in the determination of wages, hours and conditions of employment through voluntary collective bargaining,

apply. However, the likelihood of that coming to pass in the foreseeable future is slim indeed. We will not be industrious in seeking out obscure readings of statutory expressions. *See Jorgenson v. City of Sparta*, 224 Wis. 260, 263, 271 N.W. 926, 927 (1937).

mediation, fact-finding, arbitration or otherwise between the parties, in the public service or in private employment.

The analogous provision in sec. 111.70 (4) (jm) 5, Stats., posits a different checklist:

5. In determining the proper compensation to be received by members of the department under subd. 4, the arbitrator shall utilize:
a. The most recently published U.S. bureau of labor statistics "Standards of Living Budgets for Urban Families, Moderate and Higher Level," as a guideline to determine the compensation necessary for members to enjoy a standard of living commensurate with their needs, abilities and responsibilities; and
b. Increases in the cost of living as measured by the average annual increases in the U.S. bureau of labor statistics "Consumer Price Index" since the last adjustment in compensation for those members.

Brennan argues that, because sec. 111.70 (4) (jm) 5 does not require the arbitrator to consider "the interest and welfare of Milwaukee citizenry and the financial ability of the City of Milwaukee to pay the cost of an arbitration award," Milwaukee suffers as a result. The trial court concluded that sec. 111.70 (4) (jm) does not prohibit the arbitrator from considering those cost factors enumerated in sec. 111.77 (6).

We believe that, in light of sec. 111.70 (4) (jm) 3, Stats., which requires the arbitrator to "take judicial notice of all economic and social data presented by the parties which is relevant to the wages, hours and working conditions of the police department members," the question of ability to pay is before the arbitrator in as immediate a form and context as it is in sec. 111.77 (6) (c), Stats. That which an arbitrator is obliged to take judicial notice of under sec. 111.70 (4) (jm) 3, is no less determinative of a decision than is a factor which the arbitrator is obliged, under sec. 111.77 (6) (c), to "give weight to

. . . ." Our supreme court has characterized sec. 111.77 (6) as having set forth the requirement that "the arbitrator weigh *suggested* criteria." *City of Manitowoc v. Manitowoc Police Department,* 70. Wis. 2d 1006, 1017, 236 N.W.2d 231, 237 (1975). [Emphasis added.] Therefore, we do not believe that the question of a municipality's ability to pay is given shorter shrift under one statute than it is under the other.

Both Brennan's special legislation challenge and his equal protection challenge to sec. 111.70 (4) (jm), Stats., rely upon the oft-cited test for constitutional classification set forth in, among other places, *Hortonville Education Association v. Hortonville Joint School District No. 1,* 66 Wis. 2d 469, 484, 225 N.W.2d 658, 666 (1975) ; *rev'd on other grounds,* 426 U.S. 482; *cert. denied,* 427 U.S. 904 (1976) :

(1) All classifications must be based upon substantial distinctions which make one class really different from another.

(2) The classifications adopted must be germane to the purpose of the law.

(3) The classifications must not be based upon existing circumstances only. They must not be so constituted as to preclude additions to the numbers included within a class.

(4) To whatever class a law may apply, it must apply equally to each member thereof.

(5) The characteristics of each class should be so far different from those of other classes as to reasonably suggest at least the propriety, having regard to the public good, of substantially different legislation. [*Quoting Wiener v. J.C. Penney Co.,* 65 Wis. 2d 139, 147, 222 N.W. 2d 149, 153 (1974).] [Citations omitted.]

Again, we note that it is within the power of the legislature to classify cities into four classes and to enact legislation applicable only to various classes. *Teweles, supra.*

The legislature has done nothing more than that here. We point out that our supreme court in *Hortonville, supra,* 66 Wis. 2d at 484–85, 225 N.W.2d at 666, upheld secs. 111.70(4)(jm) and 111.77, Stats., as not violative of equal protection in granting binding arbitration to police and firemen, whereas teachers were not accorded that same right. As we have discussed above, we find no validity in the distinction that Brennan draws between the two statutes. We conclude that the citizens of Milwaukee are not prejudiced or adversely affected by having their police officers arbitrate under a statutory scheme insignificantly different from that applied to municipalities not of the first class. Accordingly, we affirm the trial court's determination that sec. 111.70(4)(jm) is constitutional.

*By the Court.*—Judgment affirmed.