This appeal demands our consideration of the jurisdiction of the respondents, who constitute the public service commission, for the first district of this state, to entertain, and to determine upon, a complaint by a citizen of the maintenance by a railroad corporation of a nuisance, in violation of the Sanitary Code of the charter of the city of New York. In August, 1909, there was presented to the commission, in behalf of the South Bronx Property Owners' Association, a complaint, which called the attention of the members. "to the unsanitary and offensive manner, in which the New York, New Haven Hartford Railroad Company maintains and loads its manure cars in its Harlem River yards." It describes in what way the company's acts were offensive to the people resident in, or having to pass through, the neighborhood, and alleged that "the nuisance complained of is being maintained in violation of the Sanitary Code and formal written complaint has been made to the Department of Health." The Harlem river yard referred to is used as the New York city terminal of the railroad company and it does not deny that, in the course of the conduct of that part of its business, offensive odors might be caused. It will be observed that the complaint relates not to the inconvenience, or discomfort, of the company's passengers, nor to any other other portion of its road, than is within the city of New York. At the hearing before the commission, the company moved to dismiss the complaint, "on the ground that the Public Service Act provides especially for matters, which are within the scope of the Public Service Commission, and that this is a distinct matter, which is one for the Board of Health, and a local matter, which is not * * * within the jurisdiction of the Public Service Commission." This motion was renewed *Page 427 
at the close of the case. The commissioners, in declining to grant it, were of the opinion that the legislature had delegated to the commission "the police power of the State over the agencies described in the Public Service Commissions Law, within its jurisdiction;" that the legislature could "recall any powers of the Board of Health of the City of New York so far as railroads are concerned," and that the provisions of the Public Service Commissions Law indicated that it should "prevail over any conflicting provisions of the Greater New York Charter." Therefore, the orders, which the board of health had issued, as they held, must yield to those of the commission. In determining to make the order now complained of, the commission proceeded upon the theory of its jurisdiction extending to the case of a nuisance, affecting the public health of the locality. In the opinion rendered, the matter was considered from its sanitary aspect. It was observed that "a very large part of the objection raised by the complainant was caused by the unsanitary manner, in which the railroad has allowed its business to be conducted in the past," and that, "while this traffic is a nuisance to any particular neighborhood, to a certain extent, the situation does not warrant the Commission in ordering this nuisance to be removed to some other location." Entertaining these views, the commission made the order in question. The order requires the railroad company, in substance, to remove from its yard a plank platform, from which the manure was loaded into cars; to disinfect the ground under it; to construct a new platform of Belgian blocks, graded so as to discharge all liquid matter into a sewer; to restrict the use of the tracks occupied by manure cars to that purpose only, when used for manure shipments; to place the manure cars not less than 100 feet from the elevated railroad; to load, at one time, not more than four cars; to cover the cars when loaded with a tarpaulin, or canvas, so as to prevent the escape of objectionable odors; to remove the loaded, or partially loaded, cars, at the close of each day's work to some remote part of the yard for the night, and to keep the platform clean by sweeping *Page 428 
and washing after the removal of the cars at the close of the day.
Upon the petition of the railroad company, this relator and appellant, the present writ of certiorari issued to review the action of the respondents. The Appellate Division, in the first department, on hearing the matter, upon the return made by the respondents, dismissed the writ. The learned justices divided in opinion. Those who united in affirming the proceedings of the respondents, conceding that there had been created a public nuisance, held that it did "not follow because the health department had the power to abate the nuisance, that the commission was without jurisdiction to regulate the shipment in the manner it did * * * that the statute conferred upon the commission the power to make the order which it did and it is entirely immaterial whether a nuisance existed or not."
I find myself quite unable to agree in the view taken below of the extent of the jurisdiction of these respondents and I think it was error for that body to have entertained the complaint. If some of the things ordered to be done may be considered to have been within the exercise of the powers confided to the public service commissions, if properly moved thereto in the regulation of the operations of the common carrier, that is no sufficient answer to the objection that the respondents have exceeded their powers, in this instance, in undertaking to abate a local nuisance and have unlawfully intruded upon the jurisdiction appertaining to the department of health to regulate all matters relating to the protection of the health of the city. The board of health had been complained to and had taken cognizance of the matter, pursuant to the authority conferred by the provisions of the Sanitary Code contained in the charter of the city. It was provided in the Greater New York charter that "the authority, duty and powers of the department of health shall extend over the City of New York" and that "all the authority, duty and powers heretofore conferred or enjoined upon the health department, boards of health, health and sanitary *Page 429 
officers * * * are hereby conferred upon and vested in and enjoined upon, and shall hereafter be exclusively exercised in the City of New York by the department of health, and board of health, created by this act." (Section 1168.) There was created an elaborate system, or sanitary code, which directed the enforcement of all laws applicable "to the care, promotion, or protection of health;" vested in the board of health power to exercise all authority necessary to that end and to enforce "all laws relating to cleanliness;" prescribed punishment for any violation of the Sanitary Code, as for a misdemeanor; empowered the board of health to abate nuisances; and declared a nuisance to be "whatever is dangerous to human life or detrimental to health" and, among other things "whatever renders the air * * * unwholesome." (See title I, chap. XIX, section 1229, Greater New York Charter.) There is no question but what the authority and power to act conferred upon the board of health by the city charter were ample for the purposes intended and declared. To find them withdrawn as against a railroad corporation there should be very precise language of repeal, or such apparent repugnance, and inconsistency, in the provisions of the Public Service Commissions Law as to require those of the charter to yield to them, as a later law. To find the charter provisions rendered less exclusive, the powers conferred in the later law should be in such language and of such unmistakable pertinence as to imply their concurrent exercise by the two bodies. I find none of these conditions to exist and I think that a consideration of the powers vested in the respondents, and, as well, some regard to political conditions, should lead to the conclusion that there could have been no legislative intent to affect, in any wise, the exclusive local jurisdiction of the department of health by the enactment of a general law for the supervision of railroads in the state. It would be difficult to perceive, either, a reason, or any sound policy, in conferring upon the commissions a jurisdiction concurrent with that of the city's health department. Judicial construction of a general statute should guard against interpreting its language, so as to create *Page 430 
conflict, or contradiction, with the provisions of an earlier and special statute, if it may stand independently and with a distinct and useful purpose to accomplish. I think the Public Service Commissions Law has its distinct and wide field of operation; with powers directed to the accomplishment of a general purpose, which does not involve the promotion of the health of the political subdivisions of the state. Public service commissions were established by chapter 429 of the Laws of 1907 "to provide for the regulation and control of certain public service corporations." By section 5, it was provided that "the jurisdiction * * * of the public service commission in the first district shall extend under this act; (1) to railroads and street railroads lying exclusively within that district * * * (3) to such portion of the lines of any other railroad as lies within that district, and to the person or corporation owning, leasing, operating or controlling the same, so far as concerns the construction, maintenance, equipment, terminal facilities and local transportation facilities, and local transportation of persons or property within that district." Section 6 invested the commission with "all powers heretofore conferred upon the board of rapid transit railroad commissioners," etc. Section 45 specifies the general powers of the commissions. They are to have "the general supervision of all common carriers" and to have the power to examine the same, and to keep informed as to their general condition and the manner in which their lines are managed, "not only with respect to the adequacy, security and accommodation afforded by their service, but also with respect to their compliance with all provisions of law, orders of the commission and charter requirements." Section 49 provides that "whenever the commission shall be of opinion, * * * that the regulations, practices, equipment, appliances, or service of any such * * * railroad corporation * * * in respect to transportation of persons, freight or property within the state are unjust, unreasonable, unsafe, improper or inadequate, the commission shall determine the just, reasonable, safe, adequate *Page 431 
and proper regulations, practices, equipment, appliances and service thereafter to be in force, to be observed and to be used in such transportation of persons, freight and property," etc. Section 50 provides that "if, in the judgment of the commission having jurisdiction, repairs or improvements to or changes in any tracks, switches, terminals or terminal facilities, motive power, or any other property or device used by any * * * railroad corporation * * * in or in connection with the transportation of passengers, freight or property ought reasonably to be made, or that any additions should reasonably be made thereto, in order to promote the security or convenience of the public or employees, or in order to secure adequate service or facilities for the transportation of passengers, freight or property, the commission shall * * * make and serve an order directing such repairs, improvements, changes or additions to be made," etc. Broad as are the powers conferred by the act, they are, by plain intendment, as I read them, such as are directed, exclusively, to the amplest supervision and regulation of railroad corporations, in such respects as concern their construction, maintenance, equipment, terminal facilities and operations in the transportation of persons and property. The exercise of the powers is intended to be when rendered necessary, in the judgment of the commissions, by reason of unjust, unsafe, or inadequate, regulations, practices, equipment, appliances, or service, "in respect to the transportation of persons, freight, or property." The object of the legislature, as fairly to be deduced from its enactment, was to regulate the management and the operations of common carriers, within the state, in the interest of the public; that is, of the persons who should use the facilities for the transportation of themselves, or of their property; who should serve them; or who should be interested in them, as holders of their capital stock, or obligations. The commissions were given extensive powers; but they should not be extended by implication beyond what may be necessary for their just and reasonable execution. They are not without limits, when directed against *Page 432 
the management, or the operations, of railroads, and the commissions cannot enforce a provision of law, unless the authority to do so can be found in the statute. (See Village ofFort Edward v. Hudson Valley Ry. Co., 192 N.Y. 139; People exrel. South Shore Traction Co. v. Willcox, 196 ib. 212; Peopleex rel. D. H. Co. v. Stevens, 197 ib. 1.) Nor should they reach out for dominion over matters not clearly within the statute. The "provisions of law," which section 45 refers to, are, obviously, only those which the Public Service Law contained. The section would have been very differently framed, if, by "provisions of law," all the provisions of the statute, or common, law were meant and the commissions were to be general agencies for the prosecution, generally, of violations.
When we consider the order, now, in question, we find it has no pertinence, except as it is directed to the abatement of a nuisance, complained of as affecting the health and comfort of the locality, where is situated the terminal freight yard of the relator. As that locality is within the territorial jurisdiction of the municipal department of health of the city of New York, the question is, whether the court shall say that that jurisdiction has been shorn of the power to act as against a railroad corporation. If it cannot be said that the Public Service Commissions Law was intended to furnish the only law upon the subject, it cannot be deemed to deprive the local board of health of the jurisdiction to act in matters concerning the health of the community. The language of the city charter is explicit that none of its provisions shall be deemed to be repealed, or amended, "unless it be so expressly stated, or the legislative intention to that effect is unmistakable." (Sec. 1618.) By section 1620, it is provided that the act shall be construed "as one intended to aid the state in the execution of its duties by providing * * * an adequate scheme of localgovernment for the communities and people affected, through the instrumentality of the corporate body herein constituted under the name of `The City of New York.'" The statutes of the state had provided that "there shall continue *Page 433 
to be local boards of health and health officers in the several cities, villages and towns of the state;" which should entertain jurisdiction to act upon complaints concerning nuisances, or causes of danger to life and health within the municipality. (Public Health Law, sections 20, 26.) It was provided by the Health Law that the laws relating to the boards of health of the cities of New York, Brooklyn, Buffalo, Albany and Yonkers, and to their sanitary codes, were to remain. With statutory provisions existing, general and special, it should not be presumed that the legislature intended to interfere with these administrative departments of municipalities, in the absence of unmistakable language. I believe it to be a fundamental concept of our form of government that, in the local subdivisions of the state, the people of the locality shall administer their own local affairs, to the extent not restricted by some constitutional provision. I concede the right of the legislative body to regulate the acts of local officers. I concede the interest in the public health of the whole state to be such as to justify an exercise of the legislative power to regulate administrative functions in that respect, which have been committed to local jurisdictions; but it does not follow that officers acting under the appointment of the state executive and the senate should, also, be authorized to perform the local functions of a board of health. There is no pretense, either, of a state policy, or of the existence of local abuses, which would justify interference by the state with this administrative department of the city government, and what other reasonable, or politic, ground is there for implying an intent to interfere? The legislature, in creating the public service commissions, had in contemplation a general system for the supervision and the regulation of common carriers within the state; which should promote efficiency in management, operations conducive to the comfort and safety of passengers and employees, and an equipment and facilities adequate and proper for the transportation of persons and property. Boards of health existed to act locally and exclusively for the protection of the health of municipalities. No intent to interfere with matters *Page 434 
committed to their jurisdiction is clear from the language of the act and none should be implied. Powers, differing as the objects proposed to be attained differed, were vested in the two bodies. In their several spheres of action, each body had its peculiar and special functions, with machinery supposed to be adequate to reach the evils aimed at and to enforce its mandates for their cure. To hold that they could act concurrently, not only, would be without justification in the scheme of this statute; it would permit of a clash of authority and an acute situation might arise, as Mr. Justice SCOTT observed in dissenting below.
Those views lead me to the conclusion that the public service commission was without jurisdiction to entertain the complaint and to make the order in question.
The order of the Appellate Division appealed from should be reversed and that of the public service commission should be vacated and annulled; with costs to the appellant in both courts.