NEW YORK STATE RAILWAYS, Plaintiff, v. THE CITY OF ROCHESTER, Defendant.

ROCHESTER, LOCKPORT AND BUFFALO RAILROAD CORPORATION, Plaintiff, v. THE CITY OF ROCHESTER, Defendant.

ROCHESTER AND SYRACUSE RAILROAD COMPANY, INC., Plaintiff, v. THE CITY OF ROCHESTER, Defendant.

Supreme Court, Monroe County, June, 1922.*

Injunctions — municipal corporations — city of Rochester without power to enforce ordinance, prohibiting the operation of interurban cars within the city without consent of public safety commissioner — agreement between interurban railway company and street railway company for right of way over tracks within city controlling — jurisdiction of public service commission — police power of city — public inconvenience — damage to business.

Interurban cars operate within the city of Rochester over the right of way of the street railway within the city and have been so operated under agreement with the street railway company for twenty years.   The city of Rochester passed an ordinance prohibiting the operation of interurban and suburban cars above a certain weight and with other than specified wheels within the city without the consent of the commissioner of public safety, the purpose of the ordinance evidently being to exclude such cars from the city streets and to compel the transfer of their passengers to city cars at the outskirts of the city.   Held, that the operation of interurban cars over the right of way of a street railway company within the city is dependent upon the consent of the street railway company and not upon the consent of the city and the ordinance in this respect is inoperative.

The authority of the city to regulate the " operation and speed " of railroads within its limits (Laws of 1907, chap. 755, § 86) not being designed to contravene the general policy of the state as the authority of the common council to enact ordinances is limited to such as are not inconsistent with law, held, that the ordinance encroaches upon the jurisdiction of the public service commission and is invalid.

While the city has not lost its police power to protect the public safety by reason of the Public Service Commission Law, such power cannot be exercised except in the case of an apparent emergency, and there being no such emergency and as the exclusion of the cars pending the trial would produce serious inconvenience to the public and cause substantial damage to the business of the city, a temporary injunction will be continued.

MOTIONS for temporary injunctions restraining the enforcement of an ordinance relating to interurban and suburban cars.

*Harris, Beach, Harris & Matson*, for the New York State Railways (Rochester and Sodus Division, Rochester and Eastern Division) and Rochester, Lockport and Buffalo Railroad Corporation.

---

* Received too late for insertion in proper place.— [REPR.

*Hiscock, Doheny, Williams & Cowie,* for Rochester and Syracuse Railroad Company, Inc.

*Charles L. Pierce,* corporation counsel, for the City of Rochester.

RODENBECK, J.    The ordinance challenged in this action seeks to make the operation of interurban and suburban cars depend upon two things over neither of which the city has any jurisdiction.

It makes their operation in the city streets dependent upon the consent of the commissioner of public safety.    It prohibits the operation of cars above a certain weight and with other than specified wheels except with his permission (§§ 1, 2), and then prohibits the operation of all such cars without his consent (§ 3).    It is not a mere rerouting of the cars that is sought by the ordinance.    The evident purpose of the ordinance, borne out by the permits heretofore given under it, is to exclude them from the city streets and to compel them to transfer their passengers at the outskirts of the city.    If the change in weight and wheels were made there is no assurance that consent to operate in the city streets would then be given and there is no evidence that if the changes were made the cars could be operated outside the city with the speed necessary to reasonable requirements of transportation.    So far as freight and express cars are concerned, they are subject to ordinances of the city under the franchise of the street railway (Ordinance Feb. 26, 1907, § 7) which binds the interurban and suburban cars. The city has no such authority with reference to the right to operate only with its consent as the ordinance assumes.    The operation of these cars on the right of way of the street railway cannot be made dependent upon the consent of the city.    No such consent has been required in the past and none is now imposed by law.    The cars have been operating for two decades under traffic agreements with the street railway recognized in the service at cost agreement ratified by legislative act.    Art. XI, §§ 4, 5. Under this agreement the modification of this consent has for the time being been vested in the commissioner of railroads.    The companies are not violating any law, rule or regulation in their present method of operation so far as the papers show.    There is no provision in the charter or other statutes which changes the rule heretofore existing under which all that was required for interurban and suburban cars to operate on the right of way of the street railway was the consent of that company.    Laws of 1839, chap. 218; Laws of 1890, chap. 565, § 78; Laws of 1910, chap. 481, § 148; *Ingersoll* v. *Nassau El. R. R. Co.,* 157 N. Y. 453. However unfair this rule may seem it is nevertheless the law

applicable to this case and is controlling. The efforts of the city however laudable to place the interurban and suburban cars operating in the city under its control are nevertheless futile for lack of power to accomplish that purpose.

The ordinance is also vulnerable in that it encroaches on the jurisdiction of the public service commission. This is a general commission having jurisdiction of the " construction, maintenance, equipment, terminal facilities and operation " of the railways of the state. Cons. Laws, chap. 48; Laws of 1910, chap. 480; *People ex rel. N Y., N. H. & H. R. R. Co.* v. *Wilcox*, 200 N. Y. 423; *City of Troy* v. *United Traction Co.*, 202 id. 333. The ordinance provides the weight of interurban and suburban cars and the size of their wheel flanges and tread. This is a matter which relates to the operation of these cars in the city streets and is a subject for the consideration of the public service commission and not the city authorities. The city cannot encroach upon the functions of the public service commission under the guise of regulating the use of the streets of the city. If the cars are too heavy or too long or the wheel flanges or treads are unsuited to the use of the existing street railway tracks and switches, that is a matter for the consideration of the public service commission and not the city authorities. In matters of this nature and others affecting the operation of the interurban and suburban cars the general character of their right of way outside the city must be considered. The authority of the common council under the charter to enact ordinances is limited to such as are not inconsistent with law (City Charter, § 85), and the authority to regulate the " operation and speed " of railroads in the streets of the city (Laws of 1907, chap. 755, § 86) was not designed to contravene the general policy of the state and single out this city for an exception. If the power exists under this section of the charter to regulate the weight of these cars and the character of their wheels it must extend to other similar matters and to the street and steam railroads operating through the city as this section extends to the " locomotives, engines and cars upon steam, electric and street surface railways " operating " upon and over public streets." City Charter, § 86. The legislature did not intend by this language to substitute the common council for the public service commission in matters concerning operation which come within the jurisdiction of the commission and permit the common council to prescribe the weight of locomotive engines and cars and the size and thickness of the flanges and the width of the tread of their wheels, on the ground of public safety or for any other reason.

There is no such compelling situation with respect to the use

of the tracks of the street railway by interurban and suburban cars as to justify the city authorities in imposing conditions, by way of reduction in weight of cars and changes in wheels which make the use of the tracks by interurban and suburban cars as to a large part of their equipment prohibitory. The city has not lost its police power to protect the public safety by virtue of the passage of the Public Service Commission Law and the city authorities are to be commended for their zeal in the public interest, but it has been deprived of its authority to regulate the construction, maintenance and equipment of terminal facilities and operation of street railways and the use of their tracks by interurban and suburban cars so far as the legislature has vested this authority in the public service commission. *People ex rel. N. Y., N. H. & H. R. R. Co.* v. *Wilcox,* 200 N. Y. 423; *City of Troy* v. *United Traction Co.,* 202 id. 333. There is, however, a residuum of power still in the city over its public streets so far as the street railway and its licensees are concerned and in a proper case that power may be exercised to protect the people of the city in the use of the streets of the city. The street and interurban and suburban cars have not an exclusive and dominating use of the streets of the city and in a proper case are subject to municipal control through its police power to protect the public safety. Where an emergency arises justifying the exercise of the police power the city is not obliged to await the action of the public service commission or that of the courts and the delays incident to appeals. But the situation must be a real and substantial one to warrant the drastic application of the police power of the city in the interest of public safety, and when exercised or when its exercise is threatened it may be challenged as unnecessary under the circumstances of the case. A single serious accident in a series of years is not a sufficient excuse to impose conditions looking to the exclusion of interurban and suburban cars from the city. A series of accidents which have no substantial relation to the conditions and terms imposed by an ordinance afford no justification for such regulations. Defective tracks and switches due to inattention of the street railway in the past which has given consent to the interurban and suburban cars to use their right of way, suggests the replacement and repair of tracks and switches as speedily as possible, which the commissioner of railroads may be relied upon to accomplish, rather than a prohibition of their use by the interurban and suburban cars. The condition of the right of way if sufficient in this instance to warrant the passage of the ordinance on the ground that it is not safe for use by the interurban and suburban cars, suggests that it may be equally dangerous for use by the street railway. Accidents in

the use of the tracks and switches due to their condition common to both the street and interurban and suburban cars is no ground for singling out the latter for exclusion. If. the street railway has the right to operate on tracks and switches that need replacement or repair the interurban cars by virtue of their traffic regulations with the street railway have an equal right, but both are subject to the exercise of the police power of the city to protect the public in a proper case. The city is not prostrate to protect the use of its streets because the legislature has vested certain authority in the public service commission, but the conditions must be apparent and here they do not exist. There have been no serious accidents due to the size of cars and character of wheels which the ordinance seeks to remedy. Those accidents that have been referred to relate to defects in rails or switches for the condition of which the street railway is responsible which suggest their own remedy, or are almost wholly due to causes which are not peculiar to interurban and suburban cars. If there are defects in the tracks, curves and switches which cause accidents and delays in their use the responsibility of remedying them is on the street railway which has given its consent to the interurban and suburban cars to use the right of way. The exclusion of interurban and suburban cars from the city because of accidents alone, if valid, would operate to exclude street cars and automobiles, both of which are the cause of far more numerous accidents.

There are certain practical considerations that may be taken into account on a motion of this character which seeks to enjoin the temporary enforcement of an ordinance concerning the validity of which a serious question exists. The interurban and suburban traffic to and from the city is an important factor to the city and its business interests and should not be thoughtlessly disturbed. The practical consideration of municipal interests should operate to deter any interference with transportation to and from the city except for the most cogent reasons. It would be a serious inconvenience sufficient to divert some traffic in other directions if interurban and suburban passengers were required to change cars at the outskirts of the city. The inconvenience to the city of present operations relates chiefly to Main street and to other streets in the center of the city, but this inconvenience would be increased rather than diminished if shuttle cars were used to carry passengers from stations at the outskirts of the city to central points. If shuttle cars were not used the present schedule of city cars would not be sufficient and could not be maintained and there would be an added inconvenience not only to patrons of the interurban and suburban cars for delays in transferring but to

local passengers from irregularity in schedules of city cars.   If all the interurban and suburban cars were changed to conform to the weight and size of tread and flange called for by the ordinance the present situation would be substantially duplicated so far as congestion on city streets is concerned.   There would be just as many cars with so little difference in size and weight as to make the results not worth the effort.   The only effect of the changes would be the increased expense to the interurban and suburban companies of changing their cars to comply with the ordinance. The inconvenience of transfers would affect the traffic into the city and to some extent would interfere with the business interests of the city.   A comparatively slight inconvenience will sometimes determine the route of travel and drive business from one merchant to another or from one community to another.   The considerations which attract trade to this merchant or to that place contain uncertain elements that are not always easy to tabulate and foresee. The balance of trade is a delicate one both as between communities and merchants and should not be disturbed without sufficient reason.   The trade of a particular merchant may be seriously affected by a rerouting of city cars and likewise may the patronage of a city be diverted by the inconvenience in reaching the city.   A continuous car service also encourages suburban residence of people of moderate means and thereby adds to the development, prestige and growth of the city.   The development of suburban life is one of the striking features of modern municipal growth due to improved and increased means of transportation.   This development should not be checked by compelling the suburban residents to transfer at the outskirts of the city with the delays and often with the stress of the weather incident thereto.   These observations are supported by the experience of other cities of the size of Rochester which it is alleged in the complaint and not denied uniformly permit and encourage the use of their streets by interurban and suburban cars.   A remedy for the congestion of traffic and for accidents in streets used by the interurban and suburban cars is the obvious one of making the rails, curves and switches safe for the use of the interurban and suburban cars, imposing and enforcing reasonable regulations as to the use of the streets by all vehicles, keeping in repair streets that will relieve traffic on congested streets and paving with suitable material streets now covered with worn out or antiquated pavements which are avoided by traffic.

The injunction is continued pending the trial of the action, when all the facts may be more fully and clearly brought out, on the ground that no consent of the city is necessary to the operation of the interurban and suburban cars on the right of way of the

street railway and the requirement of the ordinance in this respect is inoperative; that the weight and character of wheels of the cars is a matter of operation which comes within the jurisdiction of the public service commission and not that of the city; that there is no emergency requiring the exclusion of the cars, pending the trial, under the exercise of the police power of the city in the interest of public safety, and that the exclusion of the cars pending the trial will produce serious inconvenience to the traveling public and may cause substantial damage to the business interests of the city.

Motion granted continuing the injunction in all cases, with ten dollars costs in each case to abide the event.

Ordered accordingly.