The City of New York, Appellant, *v.* The Empire City Subway Company, Ltd., and Others, Respondents.

First Department, July 14, 1922.

Mandamus — application for peremptory mandamus to compel electrical subway corporation in New York city to put into force revised schedule of rates promulgated by city — power of fixing rates rests in city — contract with corporation provided for ten per cent earnings with balance to go to city — city had right to purchase on payment of actual cost plus deficiency in earnings — advance in rate made on erroneous theory that increased price would offset deficiency in prior earnings — mandamus denied.

A peremptory mandamus to compel the defendant, the Empire City Subway Company, Ltd., to put in force revised schedules of rates promulgated by the commissioner of water supply, gas and electricity, should be denied in the sound legal discretion of the court, where it appears that the subway company was organized to maintain subways in which were to be placed the low tension electric wires of its patrons; that the contract with the city provided that the company could receive ten per cent on the cost of the subway and that all in addition thereto would go to the city, but that a deficiency in one year might be made up from later profits, and the contract provided also that the city might acquire the subways upon the payment of the actual cost thereof, but that in case the company had not earned ten per cent, then the cost to the city would be the actual cost plus a further payment not exceeding ten per cent of the cost to make up the deficiency; that the theory on which the revised schedule of rates at a material advance over the old schedule was promulgated was to enable the company to earn extra profits to reduce the deficiency in profits of prior years so that in case the city should desire to purchase the subways, it would only have to pay the amount of the actual cash capital invested and would not have to pay for any deficiency in profits.

The theory adopted by the city in advancing the rate misconceived the intent and purpose of the legislation in regard to these electric subways and the contract made in pursuance thereof. The primary intent was neither to construct the subway for the city, nor to provide a means of revenue for the city, but to provide a means whereby the then existing overhead wires might be placed underground, and, as a safeguard against exorbitant rates, it was provided that the company's profits should be limited to ten per cent.

Mandamus should be denied, since it appears that the city has suddenly increased by sixty per cent a rental which had for many years been accepted as fair and reasonable, and has failed to show any circumstance or fact which justifies this action, and has by its own showing demonstrated that an erroneous theory of the statutes and the contract was adopted in arriving at the decision to increase the rates, and has asked for a discretionary order to be granted which will injuriously affect others and may by its own admission be detrimental to the public.

Appeal by the petitioner, The City of New York, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 29th day of March, 1922, denying petitioner's motion for a per-

emptory mandamus order requiring the Empire City Subway Company, Ltd., to put in force and effect a revised schedule of rents.

*John P. O'Brien, Corporation Counsel* [*William B. Carswell* of counsel], for the appellant.

*Edward L. Blackman*, for the respondent Empire City Subway Company, Limited.

*Francis R. Stark*, for the respondent The Western Union Telegraph Company.

*Charles T. Russell*, for the respondents New York Telephone Company and Holmes Electric Protective Company.

PAGE, J.:

This proceeding was instituted by reason of the commissioner of water supply, gas and electricity having fixed a schedule or scale of rents for the use of the electrical subways, owned by the Empire City Subway Company, and rented to various telegraph, telephone and electric light companies, to carry their low tension lines and conductors.

The history and legislation relating to these subways is stated in the opinion in *Matter of City of New York* v. *Prendergast* (202 App. Div. 308), decided herewith, to the time when the low tension system of subways was conveyed by the Consolidated Telegraph and Electrical Subway Company to the Empire City Subway Company.

The Empire City Subway Company entered into a contract with the board of electrical control as it was authorized to do by statute. (Laws of 1891, chap. 231.) This contract contained the following provisions relating to the rentals to be charged: " V. The party of the second part [The Empire Subway Co.] may fix a fair scale of rents to be charged, according to the kind of conductors and the amount of space required therefor, which shall be at the same rate to all the occupants having a like use of said subways, conduits or ducts, but the scale of rentals or any charges fixed or made by the party of the second part shall at all times be subject to the control, modification and revision of the parties of the first part [the Board of Electrical Control], or their successors; and no contract shall be made between the party of the second part and any company or corporation on any terms which shall not require payment by such other company or corporation of rents at the rates so fixed, or as modified by said board.

" VI. Whenever the net annual profits of the party of the second part, remaining after the payment of the reasonable and necessary expenses of maintaining and operating such subways, conduits and ducts, shall exceed ten per cent. upon the actual cash capital

invested by it in providing, constructing and equipping such subways, conduits and ducts, then the excess of such profits over ten per cent. shall be paid into the treasury of the City of New York, but, if in any year or years prior to the earnings of such excess the earnings of the party of the second part shall not have equalled ten per cent., then the party of the second part shall be first entitled to recoup itself out of such excess for the difference between the actual earnings and the said ten per cent., the intention hereof being that the party of the second part shall have the right to earn and receive such ten per cent. for each and every year, and that no payments shall be made to the City of New York out of such excess of earnings until the party of the second part shall first have actually earned and received ten per cent. for each year theretofore."

The contract further provided that at any time after January 1, 1897, upon demand of the commissioners of the sinking fund of the city of New York, the Empire Subway Company would convey the subways, conduits and ducts constructed by it, and transfer any and all contracts or other property of any kind to the mayor, aldermen and commonalty of said city, "upon payment of the actual cost thereof; and if the said company shall not have earned ten per cent. per annum on actual cost during the term of this contract, a further payment shall be made, in addition to the cost, not exceeding ten per cent. on such cost to the extent of such deficiency in annual earnings, or such less sum as may be agreed upon."

All the powers and duties of the board of electrical control were by subsequent legislation conferred and imposed upon the city of New York, and as to matters of administration devolved upon the commissioner of water supply, gas and electricity. (*Matter of City of New York* v. *Prendergast, supra,* decided herewith; *Holmes Electric Protective Co.* v. *Williams,* 228 N. Y. 407, 421.)

The rentals were fixed by the Consolidated Telegraph and Electric Subway Company and revised and reduced by the board of electrical control. Such rentals were adopted and continued by the Empire Subway Company until the present time. In the year 1921 the commissioner of water supply, gas and electricity had some informal discussion of the subject of rentals with representatives of the Consolidated and Empire Companies with reference to rentals of the subway and by letter requested those companies to submit a memorandum, which the companies neglected to do. On December 22, 1921, the department of water supply, gas and electricity notified the Empire Subway Company that the present rentals or charges to occupants of the various subways were modified and revised so that the terms of said rentals or charges

shall be the amount set out in a schedule thereto annexed, and notices were also sent to the tenants. This scale of rentals became effective January 1, 1922. The company refused to put in effect the revised schedule of rents, and a motion was made for a peremptory mandamus order to compel the Empire Subway Company to charge and collect from the tenants the rentals set forth in the schedule. On the hearing of the motion the Western Union Telegraph Company, the New York Telephone Company and the Holmes Electric Protective Company, tenants of the Empire Subway Company, were allowed to intervene. From a denial of the motion this appeal is taken.

The amount the Empire Company would receive in 1922 in rentals from its tenants under the old schedule would be $2,275,394.35. Under the revised schedule it would receive $3,622,043.76, an increase of approximately sixty per cent. The net profit to the company under the old schedule would be $1,518,965.23, or eight and sixty-one one-hundredths per cent on the cash capital invested; the net profit under the revised schedule, $2,865,614, or sixteen and eighty-five one-hundredths per cent on cash capital invested.

The commissioner seeks to justify this increase on the theory that the interests of the city require that the Empire Subway Company be required to charge its tenants sufficient to pay the company ten per cent on the cash capital invested and a surplus which shall be devoted, *first*, to the reduction of the difference in past years between the actual net earnings and ten per cent on the cash capital invested until the accumulated amount of such differences shall be wiped out, so that should the city desire to purchase the subways from the company, it would only have to pay the amount of the actual cash capital invested; and when that was accomplished the net profit over and above the ten per cent would be paid into the treasury of the city of New York.

In this contention he has entirely misconceived the intent and purpose of legislation in regard to these electrical subways and the contract made in pursuance thereof. The primary intent was neither to construct these subways for the city, nor to provide a means of revenue for the city. These subways are occupied by the New York Telephone Company, the Western Union Telegraph Company, Postal Telegraph-Cable Company, Holmes Electric Protective Company, Stock Quotation Telegraph Company, New York Quotation Company, Automatic Fire Alarm Company, Mercantile Burglar Alarm Company, Interborough Rapid Transit Company, Special Fire Alarm Electrical Signal Company and

32

the New York Edison Company, all of whom are compelled by law to rent space in these subways, and the larger· number of these were lawfully using an overhead system of transmission by virtue of their franchise rights from the State or by virtue of the Post Roads Act of the United States.* The only possible way of getting these overhead systems off the streets was to provide an adequate underground system for their accommodation at a reasonable expense. To provide such a system a contract was made with a corporation to furnish the capital and construct, equip and maintain them. In return for this it was given the privilege of charging a fair rental, a rental fair to the owner in that it give it a fair return on the investment, and fair to the tenant so that advantage should not be taken of the necessities of the situation and an unreasonable rental demanded for that which it had no option but to hire. As a further safeguard, a limit of a net profit of ten per cent a year was placed upon the company by a provision that any excess should go to the city, a not unusual method of insuring adequacy of service and reasonableness of rates before the days of governmental supervision and regulation of public service corporations.

The petitioner does not attempt to show that the revised rates are fair to the tenants, although they may be advantageous to the Empire Subway Company. In fact, the corporation counsel takes the position that the fairness and reasonableness of the rents are not an element in the determination of this matter, and if the tenants are aggrieved by the rates, they must seek relief in an action between themselves and the Empire Subway Company; that the power to control and revise the rental is vested in the commissioner of water supply, gas and electricity, and his determination is final in the absence of fraud or bad faith; that it must be a determination so arbitrary that it cannot be sustained on any theory. In these arguments he has failed to appreciate the power that he has invoked. He asks for a peremptory mandamus order, which is never granted unless the petitioner shows that he has a clear legal right. Its granting or refusal rests in the sound legal discretion of the court. It will not be granted where the right is doubtful or where it may injuriously affect others who are not parties to the proceeding, nor will the court compel by this process the establishment of a rental which the defendant would be unable to collect, and which would be set aside as unfair and unreasonable by the court.

The difficulty with the appellant's position is that the commissioner has suddenly increased by sixty per cent a rental which has been accepted as fair and reasonable for years, and has failed

---

* See **U. S. R. S.** § 5263 *et seq.;* Id. § 3964; 23 **U. S. Stat. at Large, 3,** chap. 9.—[Rep.

to show any circumstance or fact which justifies this action, and has by its own showing demonstrated that the commissioner adopted an erroneous theory of the statutes and the contracts in arriving at his decision, and has asked for a discretionary order to be granted which will injuriously affect others and may, by its own admission, be detrimental to the public; for the corporation counsel says that these tenants, being public service corporations, are fortunately situated in that they can pass the burden of any increase on, to be borne by their customers.

The petitioner did not show that it had a clear legal right to the order, and in the sound legal discretion of the court the motion was denied.

The order should be affirmed, with ten dollars costs and disbursements.

CLARKE, P. J., LAUGHLIN, DOWLING and GREENBAUM, JJ., concur.

Order affirmed, with ten dollars costs and disbursements.