[Civil No. 3290.   Filed June 20, 1933.]

[23 Pac. (2d) 111.]

NATIONAL SURETY COMPANY, a Corporation, Appellant, v. JAMES A. DORSEY, Doing Business Under the Firm Name and Style of ARIZONA INVESTMENT COMPANY, Appellee.

Mr. Henderson Stockton and Mr. Emmet M. Barry, for Appellant.

Mr. G. W. Shute, for Appellee.

McALISTER, J.—This is an appeal from a judgment in favor of the plaintiff who sought to recover a deposit he had made with the defendant to indemnify it against any loss it might sustain as surety on his bond as a broker.

Under the firm name and style of the Arizona Investment Company, James A. Dorsey, plaintiff herein, was carrying on a brokerage business and on June 1, 1926, executed a bond in the sum of $5,000 in favor of the state of Arizona with the National Surety Company as surety. The bond was given to comply with the provisions of chapter 30, Session Laws of 1917, which require those doing business as a broker to procure a license therefor from the Secretary of State and at the same time to

"Deliver to the Secretary of State a good and sufficient bond for five thousand dollars, payable to the State of Arizona, to be executed by said applicant together with a surety company or two good and suffi-

cient sureties, and to be approved both as to form and sureties by the Secretary of State. Said bond shall be conditioned upon the faithful compliance with the provisions of law by said applicant, and provide that upon failure to so comply, the applicant shall be liable to any and all persons who may suffer loss by reason thereof.'' Section 3, subsec. 2.

The act required that a new license be issued each year and by complying with this provision the bond of plaintiff was kept in force until June 1, 1929, when other companies assumed the liabilities it had been carrying up to that time.

On February 3, 1927, the plaintiff, in order to indemnify the defendant against loss that might result to it under the terms of this bond, delivered to the defendant $5,000 in cash and in his complaint alleges that he has faithfully complied with the provisions of chapter 30, that no one has suffered loss by reason of his failure in that respect, and that in consequence thereof he is entitled to a return of the $5,000 with two per cent. interest from February 3, 1927, which the defendant agreed to pay, but that it still neglects and refuses to return to him the deposit, though demand therefor was made on June 1, 1932.

To this complaint a general demurrer was interposed and overruled, whereupon judgment for the plaintiff for the amount sought was rendered, the defendant having announced that it would not answer further but rely on its demurrer.

The only errors assigned are that the court erred in overruling the demurrer and in entering judgment for appellee. The correctness of these rulings depend upon the answer to the query, what period of limitations applies to actions on bonds given under the provisions of chapter 30, Session Laws of 1917? The one-year period provided for in section 2058, Revised Code, 1928, applies, if the liability on such bonds is limited to ''a liability created by statute, other than a penalty of forfeiture,'' but the six-year

period appearing in section 2062, Revised Code, 1928, governs if such liability is a debt "evidenced by or founded upon a contract in writing, executed within this state." Appellant could avail itself of the defense of the one-year limitation in any action brought against it on the bond but could not take advantage of the six-year period prior to June 1, 1935. The trial court rendered judgment for appellee upon the theory that appellant's only liability under the bond is one "created by statute," and properly so if this be the correct view as to its responsibility, because the one-year period had long since passed and with it all danger of loss upon the bond.

Whether the surety's liability is one "created by statute" or a debt "evidenced by or founded upon a contract in writing" can only be determined by properly construing the phrase, "provisions of law," as used in section 3, subsection 2, of chapter 30, quoted above. That chapter requires of each person engaged in business as a broker a bond conditioned upon his faithful compliance with the "provisions of law" and providing that upon his failure to so comply he shall be liable to any who may suffer loss by reason of such failure. That reference is here had to the failure to comply with the provisions of the law enacted to regulate and control the business in which the bond is required, that is, the buying and selling of securities and commodities by brokers, etc., seems clear. The legislature evidently intended that the bond would serve as a guarantee by the broker that he would comply with the terms of the law regulating the business in which he was engaged, and not that he would observe other laws, whether they had any connection therewith or not. There is, it occurs to us, no way of looking at the matter that would justify the conclusion that a broker's failure to comply with some provision, rule or principle of law not contained in chapter 30, even though it result in loss to a person

with whom he deals, would render the surety on such bond liable for the loss. The recitals in the bond itself show that the parties to it acted upon the theory that the surety could be made to respond only for loss resulting from a failure to live up to the provisions of the act itself, for it states that whereas the principal, the plaintiff herein, is about to obtain a license to engage and practice the business of a stockbroker in accordance with the provisions of chapter 30, Session Laws of 1917, he will, in the event the license is issued to him, faithfully comply with the provisions thereof, and pay all damages that may be caused by his failure so to do. This view was justified, for it is in accord with the purpose the legislature had in mind when it passed the act supervising the business of brokers, as this is disclosed in both the terms and the title of the measure, the latter of which reads:

"An Act To Provide for the Regulation, Supervision and Control of the Business of Buying and Selling Securities and Commodities by Brokers on or Through Exchanges or Boards of Trade or Other Public Markets; to Provide for the Licensing of Brokers; to Define and Prohibit Bucketing; and Fixing Penalties."

Section 3, subsection 2, chapter 30, *supra,* is identical in meaning with the section of the Corporate Securities Act of California dealing with this phase of the same subject, and in discussing the meaning of the term, "provisions of law," the court in *Blumenthal* v. *Larson,* 79 Cal. App. 726, 251 Pac. 241, said:

"While the phrase 'provisions of law' is a very broad and general one, we are of the opinion that it only refers to the provisions of the Corporate Securities Act. . . . It seems plain to us that the phrase in question relates solely to the provisions of the Corporate Securities Act, and not to all laws generally. The title of the act in question declares it to be one for the regulation and supervision of com-

panies, brokers, and agents, to prevent fraud in the sales of securities, and it provides for the enforcement of the act and punishment for violation of its provisions. The manifest and declared purpose is to prevent fraud in the sale of securities. . . . The bond, in our opinion, was not given to insure, on the part of Larson, his proper adherence to all laws, substantive and otherwise, but solely for a compliance with the provisions of the statute, which . . . was enacted for the purpose of preventing the formation of corporations and the sale of stock thereof without the supervision of the corporation commissioner. This is the manifest intent and purpose of the act, and the bond beyond any question was given solely for the purpose of securing compliance with its provisions.''

The act creating the Public Service Commission of New York conferred upon that body ''the general supervision of all common carriers'' (Laws N. Y. 1907, chap. 429, § 45), and empowered it, among other things, to keep informed as to the manner in which the carriers' lines are managed, not only with respect to the adequacy of their service ''but also with respect to their compliance with all provisions of law, orders of the commission and charter requirements.'' The Court of Appeals in *People* v. *Willcox*, 200 N. Y. 423, 94 N. E. 212, held that the term, ''provisions of law,'' as here used, did not confer upon that body the power to compel a railroad company to abate a nuisance maintained by it in its New York City terminal freight-yard, because that was a matter falling within the jurisdiction of the Health Department of the city. It said:

''Nor should they reach out for dominion over matters not clearly within the statute. The 'provisions of law' which section 45 refers to are, obviously, only those which the public service law contained. The section would have been very differently framed, if, by 'provisions of law,' all the provisions of the statute or common law were meant, and the Commissions

were to be general agencies for the prosecution, generally, of violations."

It is suggested by appellant that in *Clark* v. *Lake Shore & Michigan Southern R. R. Co.*, 94 N. Y. 217, which was rendered more than twenty-five years prior to the Willcox case, the Court of Appeals of that state had given this expression a broader meaning. This is true, but it is apparent from the facts with which the court was there dealing that such a construction was proper. It is clear that the term, "provisions of law," as used in the case under consideration at that time applied not merely to the provisions of law in the measure in which it appeared but to provisions of law generally, including even those resting in judicial decisions, and when the purpose of an act is plain it is the duty of the court to construe it so as to accomplish that end.

We are clearly of the view that a broker's responsibility under a bond given pursuant to chapter 30, Session Laws of 1917, is limited to a liability created by statute and that the one-year period of limitation applies to an action to enforce it.

The judgment is affirmed.

ROSS, C. J., concurs.